**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CAROLYN STONE,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 4:19-CV-00413** |
| | § | |
| **HARLEY MARINE SERVICES, INC.,** | § | |
| **HARLEY MARINE GULF, LLC,** | § | |
| **HARLEY CHANNELVIEW** | § | |
| **PROPERTIES, LLC, HARRIS** | § | |
| **COUNTY, TEXAS and John R. Blount,** | § | |
| **in his official capacity for HARRIS** | § | |
| **COUNTY, TEXAS; CITY OF** | § | |
| **HOUSTON, TEXAS and Jennifer** | § | |
| **Ostlind in her official capacity for the** | § | |
| **CITY OF HOUSTON, TEXAS,** | § | |
| **Defendants.** | § | |

**PLAINTIFF'S AMENDED COMPLAINT[1] AND**
**APPLICATIONS FOR PERMANENT INJUNCTION,**
**WRIT OF MANDAMUS AND INJUNCTIVE RELIEF**

Plaintiff Carolyn Stone ("Plaintiff" or "Stone") files this complaint and application for permanent injunction against Defendants Harley Marine Services, Inc., Harley Marine Gulf, LLC, Harley Channelview Properties, LLC (collectively, the "Harley Defendants") and Defendants Harris County, Texas and John R. Blount, P.E., in his official capacity for Harris County, Texas, and the City of Houston, Texas and Jennifer Ostlind, in her official capacity for the City of Houston, Texas (collectively, the "Approving Authorities"). The Harley Defendants and the Approving Authorities are collectively referenced as "Defendants" throughout. In support thereof, Plaintiff would show the Court the following:

---

[1] This Complaint is styled as an Amended Complaint even though it is Plaintiff's first affirmative pleading filed with this Court. On January 2, 2019, Plaintiff filed her Original Petition and Application for Injunctive Relief in the 55th Judicial District Court of Harris County, Texas. This pleading is filed subject to Plaintiff's motion seeking an order remanding this case to the state court on the basis of lack of subject matter jurisdiction. Dkt. No. 5, Motion for Remand. Plaintiff reserves all rights to contest jurisdiction up until a final order is entered in this case.

## I.     NATURE OF THE CASE

1.     This suit involves Defendants' intentional disregard and violation of valid, duly recorded Restrictions (the "Restrictions") in the Lakeview Homes Addition in Channelview, Texas (the "Subdivision") that have been of record since 1945 and put all purchasers on notice that land use restrictions apply to the properties in Lakeview Homes Addition in Channelview, Texas. Since 1988, Plaintiff has lived in the Subdivision with the expectation that it was a deed restricted community favoring private residences. Now she finds her community under threat from commercial interests like the Harley Defendants, who having full knowledge of the applicable land use restrictions, purchased 10 separate lots in the Subdivision (the "Harley Lots") and subsequently began to build and operate commercial establishments. These establishments are not merely commercial, they introduce significant dangers to the safety and health of Plaintiff and her neighbors. It has unfortunately become Plaintiff's burden to enforce these Restrictions, fight the nuisance newly created by Harley Defendants' operations in the Subdivision, and seek injunctive relief and damages based on the Harley Defendants' violations.

2.     Moreover, Plaintiff is extremely disappointed that Defendants City of Houston and Harris County, as the Approving Authorities, have abdicated their regulatory authority to enforce the Restrictions on the Harley Lots in favor of commercial interests and to the detriment of the citizens in the Subdivision, placing the citizens of Harris County at unfair risk of an environmental hazard caused by Harley Defendants' commercial operations in what should be and has always been a residential neighborhood. If Texas is a state that believes in property rights, who will stand up for tax-paying residents like Plaintiff whose neighborhoods are being invaded by commercial interests?

## II.  PARTIES

3.      Plaintiff Stone is an interested property owner in the Subdivision whose property is subject to the restrictive covenants that she seeks to enforce. Plaintiff owns TR (Lot) 9a in Block 3 of the Subdivision and has used her property for a private residence since her purchase in 1988. Plaintiff's street address is 318 Lakeside Dr., Channelview, Texas 77530.

4.      Defendant Harley Marine Services, Inc. ("HMS") is a corporation formed under the laws of Washington State based in Seattle, Washington. HMS is the parent company of both Harley Marine Gulf, LLC and Harley Channelview Properties, LLC. HMS has appeared and answered in this suit. HMS' website reveals that it has operations in Houston, Texas,[2] in the Gulf Coast region, and has an ownership interest in Harley Marine Gulf, LLC,[3] which does business in Channelview, Texas.[4]

5.      Defendant Harley Marine Gulf, LLC ("HMG") is a Washington limited liability company authorized to do business in the State of Texas and registered with the Texas Secretary of State. HMG has appeared and answered this suit. HMG is a subsidiary of HMS and currently operates a commercial facility subject to certain land use restrictions at certain Lots in the Subdivision. The Harley Lots operated by HMG are identified by their respective street addresses (234, 239, 311, 313, 315 and 319 Lakeside Dr.) and (16521 and 16525 Pecan St.) in Channelview, Texas, 77530. HMG represents to the public that its address as 239 Channelview, Texas 77530 in several places,[5] indicating its principal place of business is in Channelview, Texas.

---

[2] *See* HMS' website at http://www.harleymarine.com/?
[3] *See* HMS' website at http://www.harleymarine.com/companies-hmg.asp (stating "Harley Marine Gulf, LLC is the newest member of the Harley Marine Services family.")
[4] *See* HMS' website at http://www.harleymarine.com/companies.asp (stating "The most recent addition to the Harley Marine family of companies is Harley Marine Gulf, LLC. In February 2011, Harley Marine Services acquired the former MGI of Houston, Texas.").
[5] *See, e.g.,* Google (listing Harley Marine Gulf at 239 Lakeside Dr, Channelview, TX 77530); HMG Facebook Page (https://www.facebook.com/pages/Harley-Marine-Gulf/309716662487098?ref=br_rs    listing    address    at

6.     Defendant Harley Channelview Properties, LLC ("HCP") is a Washington limited liability company and owns real property in the State of Texas. From 2012 to 2015, Harley Channelview Properties separately purchased lots (1-8) in Block 7 and lots (44-45) in Block 4 of the Subdivision (the "Harley Lots") with full knowledge of the Restrictions applicable to the property. Specifically, at the time of its purchases, HCP was provided a Notice to Purchasers informing them about the land use restrictions and covenants for Lakeview Homes Addition that expressly prohibited commercial activity. *See, e.g.,* Notice to Purchasers (Exh. 2). HCP is a subsidiary of HMS and is leasing the owned property in the Subdivision to HMG, who operates a commercial facility. HCP has appeared and answered this suit.

7.     Defendant Harris County, Texas (the "County") is a governmental organization organized under the laws of the State of Texas.  Under Chapter 203 of the Texas Property Code as well as the Restrictions, Harris County can enforce the Restrictions. TEX. PROP. CODE § 203.003; *see* also Restrictions at ¶ 19 (Exh. 1) (providing that upon any violation or attempted violation of any of the stipulations, restrictions, covenants and conditions hereinbefore set forth, it shall be lawful for Harris County to institute and prosecute any prosecution of any one of said stipulations, restrictions, covenants and/or conditions, and either to prevent him or them from so doing or to recover damages for such violations). Harris County, Texas may be served through the Harris County Attorney's Office, 1019 Congress, 15th Floor, Houston, TX 77002.

8.     Defendant John R. Blount, P.E. is the County Engineer of the Harris County Engineering Department in Harris County, Texas. Mr. Blount is sued only in his official capacity as the County Engineer. The County Engineer may be served at his principal place of business, 1001

---

Channelview, Texas); HMS' Website Page for HMG, http://www.harleymarine.com/companies-hmg.asp (stating contact information on HMS' website for HMG is Harley Marine Gulf, LLC, 239 Lakeside Dr., Channelview, TX 77530-4417).

Preston, 7th Floor, Houston, TX 77002.  In the alternative, he may be served through the Harris County Attorney's Office, 1019 Congress, 15th Floor, Houston, TX 77002.

9.      Defendant City of Houston (the "City") is a municipality of the State of Texas. Pursuant to Chapter 212 of the Texas Local Government Code and Article XV of Chapter 10, Sections 10-551 through 10-555, of the City of Houston Code of Ordinances, the City of Houston is authorized to enforce recorded restrictions contained or incorporated by reference in any properly recorded plan, plat, replat or other instrument affecting a subdivision or that portion of a subdivision located inside the boundaries of the city. CODE OF ORDINANCES, HOUSTON, TEX. § 10-553; TEX. LOCAL GOV'T. CODE § 212.002. Channelview, Texas, where Defendant HMG's property is located is in the City's extraterritorial jurisdiction as defined under the Texas Local Government Code. TEX. LOCAL GOV'T. CODE § 212.001. The City may be served by serving the City Secretary, Anna Russell, at the City Hall Annex, 901 Bagby, Room P101, Houston, Texas 77002. An additional copy of this complaint will be provided to the City Attorney's Office, P.O. Box 368, Houston, Texas 77001-0368.

10.     Defendant Jennifer Ostlind is the Assistant Director of the Planning Department for the City of Houston, Texas. Ms. Ostlind is sued only in her official capacity as a Deputy Assistant Director.  The Assistant Director may be served at her principal place of business, 611 Walker, Houston, Texas 77002.  In the alternative, the Assistant Director may be served by serving the City Secretary, Anna Russell, at the City Hall Annex, 901 Bagby, Room P101, Houston, Texas 77002.

### III.   VENUE AND JURIDICTION

11.     This suit originally filed in state court seeks to enforce the residential-use only Restrictions covering real property situated in Harris County, Texas, where both the Plaintiff and

5

HCP own real property in the same Subdivision. HCP is currently leasing the property to HMG for commercial purposes. The plat of Subdivision Lakeview Homes Addition is recorded in Volume 20, Page 66 of the Harris County Map Records and attached as Exhibit 5. Plaintiff further seeks to enjoin the Harley Defendants' commercial activities on the Property.

12.    Jurisdiction in this case is properly situated in the state court.  Plaintiff does not agree with HCP's contention that there is complete diversity among the named defendants, which is required for federal jurisdiction under 28 U.S.C. § 1332(a). Under 28 U.S.C. § 1447(c), Plaintiff has a pending motion to remand (Dkt. No. 5) and seeks an order from this Court remanding the case to state court based on the lack of subject matter jurisdiction between the parties, which include the Texas-based Approving Authorities.

13.    Defendant HMG is authorized to do business in the State as a foreign limited liability company and leases the Property in Channelview, Texas that is owned by HCP and the subject matter of this dispute. HMS is parent to HMG and operates in Texas by virtue of its subsidiary's location in Channelview, Texas.

14.    Defendants HMS, HMG, and HCP's activity in the forum is continuous and systematic, and this complaint directly relates to their activity in Channelview, Texas. Even if activity by HMS is considered sporadic, this complaint directly relates to that activity.

15.    The Approving Authorities are citizens of Texas and have enforcement authority under the Texas Local Government Code over the Restrictions at issue. Moreover, the Approving Authorities both approved the Amended Plat for the Harley Lots and other permits related to commercial uses of the Harley Lots in violation of the Restrictions.

16.    Venue of this case properly lies in Harris County, Texas, since the lawsuit was brought in the county in which all or a substantial part of the events or omissions giving rise to the claim

6

occurred. Further, venue is mandatory because recovery of damages to real property shall be brought in the county where the property is located.

## IV.   FACTUAL BACKGROUND RELEVANT TO THE VALIDITY OF RESTRICTIVE COVENANTS GOVERNING THE SUBDIVISION

### A.   THE RESTRICTIONS OF THE LAKEVIEW HOMES ADDITION

17.     Lakeview Homes Addition is a residential subdivision located in Channelview, Texas in Harris County, Texas and is within the extraterritorial jurisdiction of the City of Houston, Texas.

18.     In 1944, the Subdivision was developed pursuant to a general plan or scheme as a high quality, single-family residential restricted neighborhood with certain lots on the adjacent major thoroughfare carved out for commercial use. Since the development of the community, the Subdivision and the residents have endeavored to maintain the neighborhood in terms of aesthetics and stability of property values.

19.     In Lakeview Homes Addition, the certain restrictive covenants were imposed on each parcel or tract of land within the Subdivision and constitute covenants running with the land and are enforceable at law. A "restrictive covenant" means any covenant, condition, or restriction contained in a dedicatory instrument, [6] whether mandatory, prohibitive, permissive or administrative. TEX. PROP. CODE ANN. § 202.001(4). A restrictive covenant shall be liberally construed to give effect to its purpose and intent. TEX. PROP. CODE ANN. § 202.003(a).

20.     Unless there are specific exclusions from the restrictions, the Restrictions subject each lot in the Subdivision to their provisions for the purpose of establishing a uniform plan for the benefit of both the present and future lot owners and residents of the Subdivision. The

---

[6] "Dedicatory instrument means each governing instrument covering the establishment, maintenance, and operation of a residential subdivision . . . [t]he term includes a declaration or similar instrument subjecting real property to restrictive covenants, bylaws, or similar . . ." TEX. PROP. CODE ANN. § 202.001(1).

Restrictions and dedication for Lakeview Homes Addition are filed and recorded in the office of the Harris County Clerk under Volume 1163, Page 533-34 (Map & Dedication) and Volume 1362, Page 546-48 (Restrictions). A true and correct copy of the Restrictions governing the Subdivision is attached as Exhibit 1 and incorporated by reference the same as if fully copied and set forth at length.

21.     The Restrictions are express covenants running with the land, and are binding upon each of the Purchasers, their heirs, successors, legal representatives and assigns, and all persons claiming under them. Restrictions at ¶ 18 (Exh. 1). Since January 1, 1970, the Restrictions have automatically extended for successive periods of 10 years. At no time has there been a vote by the majority of the owners of the lots to change said covenants and restrictions, in whole or in part.

22.     The original plat of Subdivision Lakeview Homes Addition is recorded in Volume 20, Page 66 of the Harris County Map Records. A true and correct copy of the original plat is attached as Exhibit 5. As the map below shows, the property HCP is allowing HMG to perform commercial operations on is in Blocks 4 and 7 of the Subdivision, which are restricted residential.   For reference, HCP's properties are outlined in orange; Plaintiff's property is mapped in yellow; and the commercially zoned properties are outlined in purple.



23.    Paragraph 2 of the Restrictions for Lakeview Homes Addition imposes land use restrictions on certain lots in the Subdivision for residential use only. *See* Restrictions (Exh. 1) at ¶ 2 (restricting all lots, plots or parcels of land to use for private residence purposes unless expressly excluded). Only certain lots are excluded from this land use restriction in the Restrictions. *See* Restrictions at ¶ 2 (excluding only certain lots in Block 1, Block 2 (Lots 1-16 and Lot 79), Block 4 (Lot 76), Block 5 (Lots 1-20 and 60), and Block 6 (Lots 1-6) from the private residence restriction). No lots in Blocks 3 or 7 were excluded from this private residence restriction.

24.    The Restrictions are valid and enforceable against all property owners in the Subdivision.

25.    Plaintiff's property is in Block 3 of the Subdivision, and her property is used for residential use.

26.    Per the deeds recorded in the Official Public Records of Real Property of Harris County, HCP is the record owner of real property in the Subdivision referenced generally herein as the "Harley Lots" and further described as Lots 1 thru 8 in Block 7 in the Lakeview Homes Addition (collectively, the "Block 7 Harley Lots") and Lot 44 and Lot 45 in Block 4 in the Lakeview

9

Homes Addition (collectively, the "Block 4 Harley Lots"). In the deeds, the Harley Lots are identified by their respective street addresses on Lakeside Drive (234, 239, 311, 313, 315 and 319 Lakeside Dr.) and Pecan Street (16521 and 16525 Pecan St.) in Channelview, TX. The Harley Lots, owned and/or operated by the Harley Defendants, were and still are encumbered by the Restrictions governing the Subdivision at the time of their purchase.

27.    None of the Harley Lots in Block 4 or Block 7 owned by HCP were excluded from the residential restrictions in Paragraph 2 of the Restrictions.

28.    The relevant portions of the Restrictions that contain land use restrictions limiting property use in the Subdivision on certain lots to private residences only include, but are not limited to, the following:

> Now, therefore, It is hereby provided and stipulated that all property to be sold in said "Lakeview Homes Addition" sub-division shall be sold with, and subject to, the following restrictions and conditions, which are to and which shall run with the land, and which shall apply to and be binding upon the purchasers of property in said sub-division, their heirs, successors, legal representatives and assigns, and all persons claiming by, thru and under them, to-wit:

> (2) All lots, plots or parcels of land shall be used for private residence purposes only, except Block 1; and except Lots 1 to 16, both inclusive, and Lot 79, in Block 2; and except Lots 1 to 18, both inclusive, and Lot 76, in Block 4, and except Lots 1 to 20, both inclusive, and Lot 60, in Block 5; and except Lots 1 to 6 in Block 6; which said "excepted lots" may be used for business, commercial, church, or other legal purposes, except, however, that no noxious or offensive industry, business, trade or activity shall be carried on upon any lot, nor shall anything be done on any lot which may be or become an annoyance or nuisance to the neighborhood.

> (6) No structure shall be erected, located, placed, or permitted to remain, on any residential building lot other than one single-family dwelling, a private garage, and such other outbuildings incidental and usual to the use of a residential lot; and not more than one residence shall be constructed or placed on each lot.

> (8) No building or structure of any kind, including temporary living quarters of any kind, shall  be erected or placed on any lot having a frontage on the Market Street Road nearer than 80 feet to the Market Street Road property line, except a "permanent building" or "permanent residence", as herein defined and prescribed;

and no building or structure of any kind, including temporary living quarters of any kind, shall be erected or placed on any lot having a frontage road on Lakeside Drive nearer than 150 feet to the Lakeside Drive property line, except a "permanent residence" as herein defined and prescribed; and no building or structure of any kind, including  temporary living quarters of any kind, shall be erected or placed on any of the other and remaining lots in Lakeview Homes Addition nearer than 100 feet to the front property line of such lot, except a "permanent residence," or "permanent building," as the case may be, as herein defined and prescribed, and no building or structure of any kind shall be erected or placed nearer than 5 feet to the rear property line of any lot, nor, as regards all lots except said "excepted lots", nearer than 5 feet to any side property line of any lot. A private garage may be attached to or build along the side of a "permanent residence" or "permanent building," as the case may be, provided such garage does not extend out in front of the front wall of such "permanent residence" or "permanent building".

(17) No noxious or offensive trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

(18) All of the foregoing stipulations, restrictions, covenants, and conditions are and shall be covenants running with the land, and shall be binding upon the Purchaser, his heirs, successors, legal representatives and assigns, and all persons claiming under them, until January 1st, 1970, at which time said Covenants shall be automatically extended for successive periods of 10 years, each, unless by vote or a majority of the then owners of the lots it is agreed to change said covenants and restrictions, in whole or in part.

(19) Upon any violation or attempted violation of any of the stipulations, restrictions, covenants and conditions hereinbefore set forth, it shall be lawful for Harris County, or any person or persons owning any real property situations in said subdivision to institute and prosecute any proceedings at law or in equity against the person or person violating or attempting to violate any such stipulation, restriction, covenant and/or condition, and either to prevent him or them from so doing or to recover damages for such violations.

(20) The invalidation of any one of said stipulations, restrictions, covenants and/or conditions, by Judgment or Court Order, shall in no wise affect any of the other provisions, which shall be and remain in full force and effect.

*See* Restrictions at ¶¶ 2, 6, 8, 17, 18, 19, and 20 (Exh. 1).

**B.** **THE WITHDRAWN 2015 REPLAT APPLICATION TO THE CITY OF HOUSTON DEMONSTRATES HCP'S INTENT TO REMOVE THE RESTRICTIONS**

29.    HCP, City of Houston, and Harris County had notice of the Restrictions and their validity based on HCP's application to replat the Block 7 Harley Lots to the City of Houston dated April 30, 2015, which was subsequently withdrawn by HCP. In that application, McKim & Creed, Inc. on behalf of "Developer Harley Channelview Properties, LLC", as owner of the Harley Lots, submitted Application No. 2015-0607 C3N to the Houston Planning Commission to partially replat the Block 7 Harley Lots in the Lakeview Homes Addition "requesting a variance to use the subject property for other than single family residential" (the "2015 Replat Application").

30.    The 2015 Replat Application acknowledges that there were "[s]eparate restrictions filed at the time that restricted the subdivision to residential use." The 2015 Replat Application also contains additional misrepresentations to the City of Houston regarding the uses of adjoining properties on Lakeside Drive to detract from the predominately residential nature of the subdivision and on Lakeside Drive in particular. The 2015 Replat Application admits that the "overall land use within the subdivision is generally residential with the exception of lots along Old River" or Lakeside Dr. The 2015 Replat Application does not disclose in the application that there were several residences on Lakeside Drive, including the Plaintiff's residence or the former houses that HCP removed from the Harley Lots that existed at the time of purchase.

31.    In response to the question of whether the granting of the variance will not be injurious to the public health, safety or welfare, HCP's 2015 Replat Application stated that the "land use is consistent with other land use in the area and poses no apparent threat to the well-being of the remainder of the subdivision." HCP did not include its intended uses of the Harley Lots

described in detail above that pose direct risks to the neighborhood from the hazardous nature of the known scope of Defendants HMG's and HMS' operations.

32.    In response to the 2015 Replat Application, Arva L. Howard, an Assistant City Attorney from the Neighborhood Services Section of the City of Houston, reviewed the application and the statements contained therein and determined the following regarding the Harley Lots, memorialized in an email dated on or about April 29, 2015:

> Applicant wishes to replat Lots 1-8 in Block 7 of the Lakeview Homes Addition subdivision. The purpose of this replat is to create an unrestricted reserve. The applicable deed restrictions for this replat are found in Volume 1362 Page 546 of the Harris County Deed Records. Paragraph 2 states in part that "All lots, plots, or parcels of land shall be used for private residence purposes only…" This proposed replat will violate the private residence purposes only limitation in the applicable restrictions.

33.    As the City of Houston Legal Department had concluded, the Original Plat governing the Subdivision references the following recording of the related Restrictions in the real property records of Harris County, Texas related to "Instrument see Vol. 1163, page 533, Deed Records":



Original Plat Excerpt (Exh. 5).

34.    Thus, the Original Plat for the Subdivision duly incorporated the Restrictions as filed in 1945, which applied to the Block 7 Harley Lots. *See* Original Plat (Exh. 5).

13

35.     The same day in April 2015, in a written email response to this determination by the City's Legal Department, Mr. Robert "Bob" W. Terry, RPLS of McKim & Creed, as the agent and representative of HCP, the Developer and owner of the Harley Lots, stated that HCP wished to withdraw the 2015 Replat Application from consideration by the Planning Commission "based on the determination of the Legal Department" of the City of Houston.

36.     Robert W. Terry of McKim & Creed, Inc. is licensed as Registered Professional Land Surveyor by the Texas Board of Professional Land Surveying, Texas Registration No. 4420. Based on information and belief, Mr. Terry was operating as an agent of HCP for the 2015 Replat Application.

C.     **HARRIS COUNTY SUSPENDS HCP'S PERMIT APPLICATIONS BECAUSE OF THE RESTRICTIONS**

37.     In addition to the 2015 Replat Application, HCP also submitted plans for the "HARLEY MARINE CHANNELVIEW MARITIME CENTER" dated March 30, 2015, May 21, 2015, June 12, 2015, August 25, 2015 and September 28, 2015 to Harris County for plan approval. The Engineer submitting these plans indicated that these were for commercial development on one or more of the Harley Lots.

38.     In or around November 5, 2015, Harris County initially granted these five permits for the construction of a commercial office complex on the Harley Lots even though HCP had done nothing to seek a variance of the Restrictions or further replat the property since the withdrawn application in 2015.

39.     After a meeting with the Harley Defendants' representatives on or about December 2, 2015, Harris County suspended HCP's permit applications due to the Restrictions on the

property given the determination by the City of Houston Legal Department relating to the withdrawn 2015 Replat Application.

40.    Mr. Sturhan with Harris County consulted with Mr. Marlon Connley with the City of Houston who provided information to Harris County regarding the City's prior legal opinion.

41.    Several engineers for the County considered the matter closed given the Restrictions and the City's legal opinion regarding the Restrictions that prohibited any commercial development on Block 7 of the Subdivision.

42.    The County's position at that time was that no new permits should be issued by Harris County unless there was a new application for replat filed and subsequent approval from the City of Houston for a replat.

43.    However, the Harley Defendants were not giving up on the "HARLEY MARINE CHANNELVIEW MARITIME CENTER" that HMS' Vice President, Mark Stiefel, considered a "critical project" for the Company. HMS had "plan[s] to construct a world class regional headquarters" on Lakeside Dr.

44.    This attitude meant going ahead with the project with or without permits. On or about December 18, 2015, the Harley Defendants had a construction company install an electrical pole, box and underground conduit leading to its trailer, which they had no valid permits to do. Similarly, no one with Harris County could confirm that the Harley Defendants had any commercial occupancy permits for any of the trailers it was purportedly using as offices on the property. Further, the Harley Defendants had not passed any inspections for the existing buildings on the property it was now occupying, including fire inspections.

45.    On December 7, 2015, the Harley Defendants sent word to Harris County that Water Control Improvement District #21 ("WCID#21") had approved its application to provide water

and wastewater to its new facility in Channelview without a replatting, directly contrary to the advice WCID#21 provided in a November 25, 2014 letter stating that the property had to be replatted to provide these services.

46.     In the same December 7, 2015 communication, the Harley Defendants further mentioned to Harris County that they were investigating with the City of Houston as to whether they need a replat and would advise when they had that information.

47.     Then the Harley Defendants again sought approval from the Approving Authorities, this time for a plat amendment, with the full intention of getting its permits through for the "HARLEY MARINE CHANNELVIEW MARITIME CENTER."

48.     Mark Stiefel outwardly represented himself to the Approving Authorities as the person with the Harley Defendants that had principal responsibility for the project.

49.     With its permits still suspended, the Harley Defendants' back up plan was to apply for a plat amendment, which HCP, as property owner of the Block 7 Harley Lots of the Subdivision did in January 2016. Specifically, on December 29, 2015, Ms. Stiefel told engineers with Harris County that "we received advice from the City and believe we have solved the problem with an amending plat.  Approval will be in a couple weeks."

50.     In early January 2016, HCP filed an application for an amended plat for the Lakeview Homes Addition, to amend the Original Plat (the "Amended Plat"). The Amended Plat only purported to amend Lots 1 through 8 of Block 7 of the Subdivision to make a combined lot on Lakeside Dr. called "Lot 1" (the "Block 7 Harley Lots"). This combined lot remains in Block 7 of the Subdivision. *See* Amended Plat (Exh. 6). The Amended Plat left the remainder of the Subdivision unchanged.  As shown, on the plat amendment below, HCP's properties are outlined in orange on both the Original and Amended Plat, indicating the newly defined single Lot is still

16

in Block 7.  For reference, Plaintiff's property is shown in yellow on both plats included in the

exhibits.



### D.    APPLICABLE LAW REGARDING THE PROCEDURES FOR PLAT AMENDMENTS BY THE CITY OF HOUSTON

51.    As Block 7 Harley Lots of the Subdivision in Channelview, Texas are in the

extraterritorial jurisdiction of the City of Houston, the City is the municipality with the ability

and authority to review HCP's January 7 application to the City for an Amended Plat. TEX.

LOCAL GOV'T CODE § 212.025.

52.    Section 212.016 of the Texas Local Government provides for the ability of a municipal

authority, like the City of Houston, to approve and issue amended plats, which may be recorded

and is controlling over the preceding plat without vacation of the plat, if the amending plat is

17

signed by the applicants only and is solely for one or more of the purposes identified in Section 212.016. TEX. LOCAL GOV'T CODE § 212.016.

53.      Of all the allowed purposes for amending a plat under Section 212.016,[7] there is no allowed purpose that would allow an applicant to amend a plat for the purposes to remove recorded covenants or restrictions. *See* TEX. LOCAL GOV'T CODE § 212.016(a)(7), (9), (10), and (11). Specifically, a plat may only relocate one or more lot lines between one or more adjacent lots if: (A) the owners of all those lots join in the application for amending the plat; (B) the amendment does not attempt to remove recorded covenants or restrictions; and (C) the amendment does not increase the number of lots.  TEX. LOCAL GOV'T. CODE § 212.016(a)(9); *see also* TEX. LOCAL GOV'T. CODE § 212.016(a)(7) (prohibiting any amendment that attempts to remove recorded covenants or restrictions); TEX. LOCAL GOV'T. CODE § 212.016(a)(11) (prohibiting any amendment that attempts to remove recorded covenants or restrictions).

---

[7] A plat amendment must be solely for one or more of the following purposes: (1) to correct an error in a course or distance shown on the preceding plat; (2) to add a course or distance that was omitted on the preceding plat; (3) to correct an error in a real property description shown on the preceding plat; (4) to indicate monuments set after the death, disability, or retirement from practice of the engineer or surveyor responsible for setting monuments; (5) to show the location or character of a monument that has been changed in location or character or that is shown incorrectly as to location or character on the preceding plat; (6) to correct any other type of scrivener or clerical error or omission previously approved by the municipal authority responsible for approving plats, including lot numbers, acreage, street names, and identification of adjacent recorded plats; (7) to correct an error in courses and distances of lot lines between two adjacent lots if: (A) both lot owners join in the application for amending the plat; (B) neither lot is abolished; (C) the amendment does not attempt to remove recorded covenants or restrictions; and (D) the amendment does not have a material adverse effect on the property rights of the other owners in the plat; (8) to relocate a lot line to eliminate an inadvertent encroachment of a building or other improvement on a lot line or easement; (9) to relocate one or more lot lines between one or more adjacent lots if: (A) the owners of all those lots join in the application for amending the plat; (B) the amendment does not attempt to remove recorded covenants or restrictions; and (C) the amendment does not increase the number of lots; (10) to make necessary changes to the preceding plat to create six or fewer lots in the subdivision or a part of the subdivision covered by the preceding plat if: (A) the changes do not affect applicable zoning and other regulations of the municipality; (B) the changes do not attempt to amend or remove any covenants or restrictions; and (C) the area covered by the changes is located in an area that the municipal planning commission or other appropriate governing body of the municipality has approved, after a public hearing, as a residential improvement area; or (11) to replat one or more lots fronting on an existing street if: (A) the owners of all those lots join in the application for amending the plat; (B) the amendment does not attempt to remove recorded covenants or restrictions; (C) the amendment does not increase the number of lots; and (D) the amendment does not create or require the creation of a new street or make necessary the extension of municipal facilities.  TEX. LOCAL GOV'T. CODE § 212.016.

18

54.     Section 212.016(b) does not require notice, a hearing, or the approval of other lot owners to amend a plat. TEX. LOCAL GOV'T CODE § 212.016(b).

55.     The statute does not contemplate an amended plat being able to be approved if it constitutes an attempt to remove recorded covenants or restrictions. TEX. LOCAL GOV'T CODE § 212.016(b).

56.     In reviewing HCP's application for the Amended Plat, on or about February 8, 2016, Jennifer Ostlind, the Assistant Director of the City of Houston's Planning Department, stated "[t]he amending plat does not remove the deed restrictions. So a commercial permit should not be issued unless the deed restrictions are amended to allow other uses."

57.     This statement by Ms. Ostlind is a correct statement of Texas law under various applicable sections of the Texas Local Government Code governing the approval of amended plats and the issuance of municipal permits. TEX. LOCAL GOV'T CODE § 212.016 (regarding the prohibition on plat amendments to remove or amend restrictions or covenants on real property); TEX. LOCAL GOV'T. CODE §§ 214.161-68 (regarding the prohibition on municipal permits being issued in violation of restrictions or covenants on real property).

58.     This February 8, 2016 statement by Ms. Ostlind was made in response to an inquiry from another City of Houston employee that relayed the following information to Ms. Ostlind:  HCP's "intention in applying for the plat amendment is to place a commercial building and development on the same property."

**E.     APPLICABLE LAW REGARDING THE PROCEDURES FOR PLAT AMENDMENTS BY HARRIS COUNTY, TEXAS**

59.     As the Block 7 Harley Lots are in Harris County, the County has the ability and authority to review HCP's January 8, 2016 application to Harris County for the Amended Plat, having adopted rules governing plats in its territory. TEX. LOCAL GOV'T CODE § 232.0013.

60.     Section 232.011 of the Texas Local Government provides for the ability of a Commissioners Court for the Harris County to approve and issue amended plats, which may be recorded and is controlling over the preceding plat without vacation of the plat, if the amending plat is signed by the applicants only and is solely for one or more of the purposes identified in Section 232.011. TEX. LOCAL GOV'T CODE § 232.011(a).

61.     Of all the allowed purposes for amending a plat under Section 232.011, there is no allowed purpose that would allow an applicant to amend a plat for the purposes to remove recorded covenants or restrictions. *See* TEX. LOCAL GOV'T CODE § 232.011(a). TEX. LOCAL GOV'T. CODE §232.011(a)(6)(C) (prohibiting amendments that attempt to remove recorded covenants or restrictions and that have material adverse effect on the property rights of other owners of property). The statute does not contemplate an amended plat being able to be approved if it constitutes an attempt to remove recorded covenants or restrictions. TEX. LOCAL GOV'T CODE § 232.011(b).

62.     Section 232.011(c) does not require notice, a hearing, or the approval of other lot owners to amend a plat. TEX. LOCAL GOV'T CODE § 232.011(c).

63.     After receiving the application for the amended plat, the Harris County Engineering Department also struggled to resolve the conflict between what the Harley Defendants had to

attest to obtain the plat amendment and the known intention of the Harley Defendants to build the HARLEY MARINE CHANNELVIEW MARITIME CENTER.

64.     One email from Harris County Engineering Department Engineer, Shawn Sturhan, pondered: "Is Harris County breaking state law by allowing commercial permits on a tract that the local jurisdiction that has ETJ power over that the tract deems that replat is necessary before commercial permits can be allowed?" Mr. Sturhan continues: "I don't think it is as easy as saying 'HC doesn't enforce deed restrictions' seeing as we have in writing from the city that commercial permits should not be allowed without replat." This engineer with the County assumed (correctly) that HCP had asked the City for a replat and got denied as they had not produced a "Certificate of Compliance."

65.     As of February 8, 2016, like the City, the County determined that the plat amendment was improper, and the permits would remain suspended.

66.     Harris County engineer, Jesse Morales stated the County's position to HCP on February 8, 2016 that it would "stand by its discussion from the meeting on December 2015 that the permits should remain suspended and that no activity should be taking place on site."

**F.     THE HARLEY DEFENDANTS' SERIES OF MISREPRESENTATIONS TO THE APPROVING AUTHORITIES REGARDING THE RESTRICTIONS**

67.     Several individuals representing the Harley Defendants then worked to pressure the City and the County to change their mind regarding the approval of the amendment plat in February and March of 2016. These individuals primarily included: (1) Bob Terry of McKim & Creed, Inc., Professional Land Surveyor, (2) Reid Wilson of Wilson Cribbs & Goren, and (3) Mark Stiefel, a Vice President of Administration with HMS.

68.    Mr. Stiefel's communications to representatives for one or more of the Approving Authorities hoped for a "prompt resolution to this matter so that we can achieve our goals and objectives."

69.    Specifically, the Harley Defendants made misrepresentations to the County indicating that the City had approved the plat in order to get Harris County engineers on board:

- On February 5, 2016, Bob Terry emailed that "[t]he City has reviewed the plat and it's clear with them. We are still waiting on comments from Harris County."

- On February 8, 2016, Mark Stiefel represented in an email:  "the City is in the process of approving the amended plat knowing our plans for continued commercial use of the property."

- On February 8, 2016, Reid Wilson communicated: "We have all approvals required from the City of Houston. I met with COH Planning and Legal last fall and all we need from them is an Amending Plat. COH has approved one and it has been submitted to HC for its approval, then recording. NOTHING further is required by COH. COH does not have legal authority to enforce deed restrictions in the ETJ and readily admits it."

70.    In this same email of February 8, 2016, Mr. Wilson continued with additional reasons why he believed that Harris County should also approve the amended plat and just ignore the Restrictions that he even attached a copy of to his email:

- "The plat and deed restrictions are attached. The lots noted on the plat are owned by our client."

- "The old deed restrictions of record are no longer legally enforceable due to waiver, change in conditions and other equitable defenses well established in Texas."

- "There are many non-residential uses in the area."

- "There is much vacant land in the area"

- "Much of the housing stock has clear violations."

- "The scale of similar on-compliance along Lakeside is dramatic – barge after barge after barge (see Google earth).

- "Our client and its predecessors has operated a barge terminate for many years at this location."

- "No new housing has been built in many years."

- "The surrounding area is <u>heavily</u> industrial."

- "No POA."[8]

- "No record of any enforcement ever in the district court records."

71.     Even though no court of law or judicial procedure had ever found that the Restrictions governing the Block 7 Harley Lots were not valid, Mr. Wilson, a licensed attorney in the State of Texas, was maintaining unilaterally that Restrictions (that he attached to his email) were of no import because his client said so. His statements contradict a long line of Texas case law stating the exact opposite. One owner in a restricted subdivision cannot modify the restrictions without the concurrence of the others.

72.     Mr. Wilson continued to argue that he personally "was not aware of any state law authorizing the County to withhold commercial permits for the sole reason that old deed restrict (sic) continue of record."  With this statement, Mr. Wilson implicitly acknowledges, on behalf of HCP, that the Restrictions were duly recorded in the Harris County, Texas property records and were "of record."

73.     In response to one or more of these statements from the Harley Defendants' agents and representatives, Harris County engineers asked internally: "[d]oes the amending plat remove the residential restriction?  Has the City approved the new lot created to have commercial put on it?" The Harley Defendants' attempts to circumvent the Restrictions, with the support of the Approving Authorities, particularly Harris County, were working.

---

[8] POA is assumed to mean "Property Owners Association."

74.     By the end of February 2016, several Harris County Engineers, including Julian Boxill were fully aware and shared with each other by email that "HCP had withdrawn the replat request due to the fact that HCP had been advised by the [City of Houston] during the review that the plat would be denied the variance." Harris County also knew the "COH legal Dept opinion was the reason the variance, to change from residential to commercial, would have been withdrawn."

75.     In another email dated February 29, 2016, Harris County Engineer, Julian Boxill, wondered why Defendant HCP submitted of its "civil plans several times" for approval "after they know that commercial was not allowed on that property." "Was that intentional, I don't know;" Mr. Boxill continued, but "in my opinion, it is enough that we could suspend/revoke the permit."

76.     Beginning in early February 2016, Bob Terry had been requesting meetings with the City of Houston. Reid Wilson was copied on these requests. Based on information and belief, Mr. Wilson also attended the meeting that eventually took place between the Harley Defendants and the City regarding the amending plat in early 2016.

77.     Based on information and belief, a similar in-person meeting likely happened between the Harley Defendants and the County, as it was also requested by Mr. Wilson and Mr. Terry during this same time frame.

78.     Then, miraculously, there was no longer any issue to resolve.

79.     On March 1, 2016, Harris County engineers were still discussing that Harris County had always allowed the City to determine and decide the existence of Restrictions within its extraterritorial jurisdiction. However, something apparently had changed because the City was

now signing off on the Amended Plat, which expressly stated that it was not an attempt to alter or remove the Restrictions on the Block 7 Harley Lots. *See* Amended Plat (Exh. 6).

**G.    THE AMENDED PLAT IS MADE WITH KNOWINGLY FALSE REPRESENTATIONS BY HCP AND SIGNED OFF ON BY THE APPROVING AUTHORITIES**

80.    After the withdrawn 2015 Replat Application in April 2015 and the suspension of HCP's permits by Harris County in December 2015, the Harley Defendants and the Approving Authorities were definitively on notice of the Restrictions at the time the Amended Plat was made.

81.    Moreover, during this time frame in 2016, Plaintiff repeatedly asserted to both the Harley Defendants and the Approving Authorities that there were duly-recorded restrictions reflected in the Original Plat and filed in the real property records for over 70 years.

82.    Despite their knowledge of the Harley Defendants' intended use of the property in violation of the Restrictions, HCP and the Approving Authorities signed the Amended Plat.

83.    On the Amended Plat, the Vice President of HCP, Mark Stiefel, and its Manager of Property and Facilities, Daniel Alhadeff, as officers, employees, agents, and/or representatives of the owner of the Harley Lots, HCP, made the following representations on February 11, 2016, that the Amending Plat "does not attempt to alter, amend, or remove any covenants or restrictions." These express representations by HCP and its officers, employees, agents, and/or representatives regarding the Restrictions are memorialized on the Amended Plat and excerpted below:

WE, HARLEY CHANNELVIEW PROPERTIES, LLC, A WASHINGTON LIMITED LIABILITY COMPANY, OWNERS OF THE PROPERTY DIRECTLY AFFECTED BY THIS AMENDING PLAT BEING LOTS 1 THROUGH 8 OUT OF BLOCK 7 AS INDICATED HEREON, DO HEREBY CONSENT TO THIS AMENDING PLAT FOR THE PURPOSES HEREIN EXPRESSED.

FURTHER, OWNERS HEREBY CERTIFY THAT THIS AMENDING PLAT DO NOT ATTEMPT TO ALTER, AMEND, OR REMOVE ANY COVENANTS OR RESTRICTIONS.

HARLEY CHANNELVIEW PROPERTIES, LLC
A WASHINGTON LIMITED LIABILITY COMPANY

BY: _____          ATTEST: _____
MARK STIEFEL, VICE PRESIDENT, ADMINISTRATION          DANIEL ALHADEFF, MANAGER, PROPERTY AND FACILITIES

STATE OF WASHINGTON
COUNTY OF KING

BEFORE ME, THE UNDERSIGNED AUTHORITY, ON THIS DAY PERSONALLY APPEARED MARK STIEFEL, VICE PRESIDENT, ADMINISTRATION, AND DANIEL ALHADEFF, MANAGER, PROPERTY AND FACILITIES, KNOWN TO ME TO BE THE PERSONS WHOSE NAMES ARE SUBSCRIBED TO THE FOREGOING INSTRUMENT AND ACKNOWLEDGED TO ME THAT THEY EXECUTED THE SAME FOR THE PURPOSES AND CONSIDERATIONS THEREIN EXPRESSED AND IN THE CAPACITY THEREIN AND HEREIN STATED.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS 11 DAY OF *February*, 2016



NOTARY PUBLIC IN AND FOR THE STATE OF WASHINGTON
PRINT NAME: MN Kline
MY COMMISSION EXPIRES: April 30, 2018

*See* Amended Plat Excerpt (Exh. 6).

84.    The stated purpose for amending the Original Plat that appears in the Amended Plat was to create one lot out of Lots 1 through 8 in Block 7 as excerpted below. *See* Amended Plat (Exh. 6).

85.    Even after being placed on notice of the Restrictions applicable to the Harley Lots on or before April 29, 2015, Mr. Terry signed the Amended Plat less than a year later. Mr. Terry signed the Amended Plat knowing what HCP's plans were for the property based on the 2015 Replat Application that he withdrew on HCP's behalf with the City of Houston.[9]

---

[9] Plaintiff is still investigating whether additional causes of action may exist against Mr. Bob Terry or other professionals acting as agents of HCP for the misrepresentations associated with the Amended Plat. Based on information and belief, Mr. Robert W. Terry is a citizen of the State of Texas who lives at 13323 Cologne Dr., Houston, Texas 77065.



I, ROBERT W. TERRY, HEREBY CERTIFY THAT THE FOLLOWING CHANGES WERE NECESSARY TO ELIMINATE ERRORS WHICH APPEAR ON THE PLAT OF LAKEVIEW HOMES ADDITION, RECORDED ON JANUARY 29, 1945 IN VOLUME 20, PAGE 66 OF THE HARRIS COUNTY MAP RECORDS.

ROBERT W. TERRY
REGISTERED PROFESSIONAL LAND SURVEYOR
TEXAS REGISTRATION NO. 4420

1)  AMENDING PLAT TO CREATE ONE LOT OUT OF LOTS 1 THROUGH 8, BLOCK 7

APPROVED BY THE HOUSTON PLANNING COMMISSION THIS 1st, DAY OF March, 2016.

BY: _____
MARK A. KILKENNY (OR) M. SONNY GARZA
CHAIR OR VICE CHAIRMAN

BY: _____
PATRICK WALSH, P.E.
SECRETARY

86.     Under Section 212.016 of the Local Government Code, the Planning Commission for the City of Houston considered and approved the Amended Plat for the Block 7 Harley Lots with knowledge of the Defendant's intended commercial use after receipt of the Amended Plat.

87.     On March 1, 2016, as shown above on excerpted portion of the Amended Plat, the City of Houston's Planning Commission signed and approved the Amended Plat based on the representations made by HCP stated immediately above on these signatures on the Amended Plat with knowledge of the Harley Defendants' intended commercial use after receipt of the Amended Plat. *See* Amended Plat (Exh. 6).

88.     Specifically, both the Vice Chairman of the Houston Planning Commission, M. Sonny Garza, and Commission Secretary Patrick Walsh, P.E.'s representative, Jennifer Ostlind, the Assistant Director of the City of Houston's Planning Department, signed the Amended Plat. *See* Amended Plat (Exh. 6).

89.     Under Section 232.011 of the Local Government Code, on or about April 26, 2016, the Commissioners Court of Harris County considered and approved the Amended Plat for the Block 7 Harley Lots with knowledge of the Harley Defendants' intended commercial use after receipt of the Amended Plat.

90.    At the time of the approval by the Commissioners Court, County Judge Ed Emmett and Precinct 2 Commissioner, Jack Morman, knew of the Harley Defendants' intention to build of a commercial development on the property and the presence of the Restrictions that restricted such development.

91.    On or before May 9, 2016, John R. Blount, P.E., the County Engineer for Harris County, further certified that the Amended Plat complied with all the existing rules and regulations of Harris County Engineer's Office:



*See* Amended Plat (Exh. 6).

92.    Before signing the Amended Plat, in late March 2016, Mr. Blount had received copies of the Restrictions governing the Block 7 Harley Lots that were part of the amending plat and directed individuals with his office to investigate the circumstances of the Restrictions and the Harley Defendants' plans for a commercial development on the property.

93.    Mr. Blount decided to release the suspension on the permits which sought to use the property commercially on or about March 21, 2016, based on Blount's determination that "Harris County did not enforce deed restrictions."

94.    Thus, the County's position would be that it would now be a civil matter for the residents of the neighborhood to enforce and that the County could do nothing since they don't enforce deed restrictions. In making this determination, Mr. Blount knew in signing the Amended Plat that Harley Defendants planned to move forward with a commercial facility on the property in

contravention of the Restrictions. Thus, the representations on the Amended Plat were flash or made for a fraudulent purpose.

95.    Residents in the Lakeview Homes Addition with validly recorded Restrictions were just being left to fend for themselves and hire lawyers to fix a problem only the Harley Defendants, the City of Houston, and Harris County by violating state laws and property protections had created.

96.    One of the positions taken by one County Attorney, Randy Smidt, in April 2016 was that the City needs to act to enforce the Restrictions, as it had with the 2015 Withdrawn Replat, since the Amended Plat was allowing the Harley Defendants to move forward. However, the County Attorney's Office could take a look at the issue for a homeowner for the small fee of $15,000.

97.    Harris County stated its position to Plaintiff that it would only enforce "very old restrictions that run with the land" without recognizing that the Restrictions for this Subdivision were recorded 70 years ago and expressly state they run with the land. *See* Restrictions (Exh. 1).

98.    The representations on the approved Amended Plat constitute promises by the applicant, HCP, and the Approving Authorities that the Amended Plat was being adopted in accordance with Sections 212.016 and 232.011 of the Texas Local Government Code and that "the amendment does not attempt to remove recorded covenants or restrictions." TEX. LOCAL GOV'T CODE § 212.016; TEX. LOCAL GOV'T CODE § 232.011(b).

99.    Based on these representations by HCP and the Approving Authorities, the County Clerk of Harris County, Stan Stanhart, then duly recorded the Amended Plat in the real property records on May 9, 2016.

I, STAN STANART , COUNTY CLERK OF HARRIS COUNTY, DO  HEREBY CERTIFY THAT THE WITHIN INSTRUMENT WITH ITS CERTIFICATE OF AUTHENTICATION WAS  FILED FOR REGISTRATION IN MY OFFICE ON _May 9_____ , 2016, AT _11:53_ O'CLOCK _A_.M., AND DULY RECORDED ON _May 9_____ , 2016, AT _4:20_ O'CLOCK _P_.M., AND AT FILM CODE NUMBER _678095_____ OF THE MAP RECORDS OF HARRIS COUNTY FOR SAID COUNTY.

WITNESS MY HAND AND SEAL OF OFFICE, AT HOUSTON, THE DAY AND DATE LAST ABOVE WRITTEN.

ANY PROVISION HEREIN WHICH  RESTRICT THE
SALE, RENTAL OR USE OF THE DESCRIBED
REAL PROPERTY BECAUSE OF COLOR OR RACE
IS  INVALID AND UNENFORCEABLE UNDER
FEDERAL LAW

This certificate is valid only as to the instrument on
which the original signature is affixed and only then to
the extent that such instrument is not altered or
changed after recording

STAN STANART

STAN STANART
COUNTY CLERK
OF HARRIS COUNTY, TEXAS

BY:
     DEPUTY    _Jinu Omega III_

*See* Amended Plat Excerpt (Exh. 6).

100.    It was foreseeable that the public, such as the other residents and property owners in the Subdivision, like the Plaintiff, would rely on the representations made by HCP and the Approving Authorities that the plat amendment was not being granted in violation of state law.

101.    Specifically, the Subdivision property owners in May 2016 and subsequent to that time, foreseeably relied on the representations the plat amendment complied with Sections 212.016 and Section 232.011 of the Local Government Code and the express statements that the amendment "does not attempt to alter, amend, or remove any covenants or restrictions."

102.    Further, the public has a right to rely on the Approving Authorities' duties to follow state law and duly record documents related to real property required by law.

103.    Similarly, Plaintiff, as a member of the general public, was entitled to rely on the representations made by HCP and the Approving Authorities associated with the plat application, its subsequent approvals, and ultimate filing in the real property records. Even if the Amended Plat was approved for the purposes of consolidating some of the Block 7 Harley Lots, the Restrictions should not be disturbed.

104.    Bottom line, regardless of the Amended Plat, the Harley Defendants should not have been able to build a commercial facility across the street from Plaintiff's house.

30

**H.      HARRIS COUNTY APPROVED THE HARLEY DEFENDANTS' PERMITS IN RELIANCE ON THE AMENDED PLAT**

105.    The Harley Defendants, however, then used the plat amendment to obtain additional commercial permits from both Approving Authorities as it built out its facility on Lakeside Dr. across from the Plaintiff's home. In submitting these permit applications related to the HARLEY MARINE CHANNELVIEW MARITIME CENTER, there were necessarily at least false implications and likely additional false misrepresentations made the Harley Defendants in seeking these permits as evidenced by the Amended Plat and the withdrawn 2015 Replat Application that will constitute additional fraudulent conduct that both the Approving Authorities will have also been complicit with in terms of their additional approvals of such permits.

106.    For example, based on information and belief, to construct and maintain their existing commercial facility on the Harley Lots, the Harley Defendants would have been required to procure construction permits for the HARLEY MARINE CHANNELVIEW MARITIME CENTER, waste services and wastewater permits, plumbing permits, and certificates of occupancy. There are other regulatory agencies, such as the WCID#21, which may have relied on false information provided by the Harley Defendants regarding the Restrictions or conditions of current land use in the Subdivision to obtain other permits related to its regional headquarters and base of operations now located on Lakeside Dr.

107.    Based on a review of these permits issued to the Harley Defendants, they contained errors and inaccuracies regarding the location of the property and other inconsistencies regarding the planned commercial project. For example, some of the street addresses on the permits were incorrect and not located in the Subdivision or Channelview, Texas.

108.    Moreover, before the Amended Replat was even approved and filed of record by Harris County, the Harley Defendants were already moving forward with construction on the site.

109.    In reviewing the Harley Defendants' applications for permits while the amended plat was pending, Alisa Max, P.E., who is the Watershed Protection Group Manager for Harris County, stated in a March 24, 2016 email that amending the plat did "not change their plotted land usage from residential to commercial." This statement is true. TEX. LOCAL GOV'T CODE § 232.011 (regarding the prohibition on plat amendments being used remove or amend restrictions or covenants on real property).

110.    Under Floodplain Management Restrictions governing Harris County, the County can revoke any permits where the applicant has falsified information in the permit application. *See* Harris County Floodplain Management Restrictions at § 5.04 (June 18, 2007).

## I.    THE APPROVING AUTHORITIES HAVE THE ABILITY TO ENFORCE VIOLATIONS RELATED TO THE FRAUDULENTLY OBTAINED AMENDED PLAT.

111.    Now almost exactly three years later from the date of its certification to the Approving Authorities in the Amended Plat, HCP takes the position in its February 13, 2019 Counterclaim filed in this lawsuit that the Restrictions that were duly acknowledged by the company's agents in the Amended Plat in February 2016 and in withdrawing the 2015 Replat Application are "not valid, not enforceable, void, or inapplicable to the subject property and Defendant." Counterclaim at ¶106 (Dkt. No. 4).

112.    As pled by HCP in its Counterclaim, the only changed circumstances in the neighborhood that occurred between the date of the 2015 Replat Application being withdrawn (April 29, 2015) and the Amended Plat application (February 11, 2016) were changes made on the Harley Lots. HCP cannot maintain that the Restrictions were waived based on its use of its own property.

113.    The neighborhood to this date, despite HCP's now constructed commercial facility, remains residential as the City of Houston originally concluded in its legal determination of April 29, 2015.

114.    Plaintiff further suggests that HCP's violations of Sections 212.016 and Section 231.011 and its subsequent conduct related to the property after receiving the amended plat based on its false representations to the Approving Authorities are subject to enforcement under the Texas Local Government Code. TEX. LOCAL GOV'T CODE § 212.018; TEX. LOCAL GOV'T CODE § 232.005.

115.    Even after the City of Houston had signed the Amended Plat but before it was recorded of record in May 2019, Director Walsh and Assistant Director Ostlind, both with knowledge that the Harley Defendants had submitted permits for commercial use on the property and was actively building a facility, refused to revoke the Amended Plat.

116.    With admitted awareness of the Restrictions and the law regarding plat amendments governing the City, the position by Ms. Ostlind of the City of Houston in April 2016 remained definitely that the Plat Amendment did not remove the Restrictions or change the use of the lot(s) from single family to commercial.

117.    Finally, on April 14, 2016, Ms. Ostlind's position was that the City was unable to revoke the Amended Plat and the City would take no further action because the property was outside of the city limits.

118.    In September 2016, Ms. Arva Howard, still in the City's Legal Department and the author of the original determination that Restrictions were valid and would prevent the withdrawn 2015 Replat Application stated that the Approving Authorities were just turning a

"blind eye" to the situation since the property was only in the extraterritorial jurisdiction and not the city limits.

119.    Under Section 212.018, the City of Houston, as one of the Approving Authorities, is able to recover damages from HCP in an amount adequate for the municipality to undertake any construction or any other activity necessary to bring about compliance with a requirement regarding the Harley Lots subject to the Amended Plat, which would include the demolition of HARLEY MARINE CHANNELVIEW MARITIME CENTER on the Block 7 Harley Lots as reflected on the Amended Plat. TEX. LOCAL GOV'T CODE § 212.018(a)(2).

120.    Similarly, even after a similar investigation at the County regarding the improprieties and violations of state law that occurred with the approval of the Amended Plat, the County still refused to act.  On or about June 30, 2016, the County communicated to Ms. Stone that "there was nothing more that the County could do."

121.    Under Section 232.005, the County, as one of the Approving Authorities, is able to recover damages from HCP in an amount adequate for the county to undertake any construction or any other activity necessary to bring about compliance with a requirement regarding the Harley Lots subject to the Amended Plat, which would include the demolition of HARLEY MARINE CHANNELVIEW MARITIME CENTER on the Block 7 Harley Lots as reflected on the Amended Plat. TEX. LOCAL GOV'T CODE § 232.005.

122.    Plaintiff willingly invites the Approving Authorities to take such action to enforce the Restrictions on the Harley Defendants contemplated under the Local Government Code when such fraudulent representations are made. TEX. LOCAL GOV'T CODE § 212.018(a)(2); TEX. LOCAL GOV'T CODE § 232.005.  The failure to take such enforcement action shall be further evidence that the Approving Authorities were complicit in HCP's misrepresentations and

34

knowingly assisted or participated along with HCP's fraudulent attempts to obtain the Amended Plat to the detriment of over 190 other property owners and/or residents of the Lakeview Homes Addition subdivision.

**J.    THE AMENDED PLAT CANNOT PROPERLY BE USED TO CHANGE THE RESTRICTIONS**

123.    Because the plat amendment that HCP obtained for the Block 7 Harley Lots does not comport with these statutory restrictions on amended plats, and HCP was not legally able to remove the recorded Restrictions on the Block 7 Harley Lots.

124.    Moreover, Plaintiff has noticed several irregularities with the Harris County Clerk's recording of amended plats within the Subdivision. In amending the plat, the Harris County Clerk recorded the lot as "Lot 1, Block 1", not "Lot 1, Block 7", as clearly shown on the amended plat. Such recording is also a violation of the statutory restrictions referenced above. Moreover, there are at least 3 separate properties that the Harris County Clerk's office has recorded as Lot 1, Block 1 in the Subdivision, leading to even further questions about the County's compliance with statutory restrictions regarding plat amendments and the threats to this largely residential Subdivision as a result.

125.    The Texas Legislature put in these platting restrictions in the Texas Local Government Code to protect private property interests, and now the Harley Defendants, Harris County, and the City of Houston seem to be complicit in trying to erode Plaintiff's property rights in the Subdivision and those of the other residential lot owners that purchased property in the Subdivision believing it was restricted primarily for residential use except for specifically excepted lots. *See* Restrictions at ¶ 2 (Exh. 1).

126.    Prior to the approval of the Amended Plat, both the City of Houston and Harris County are both well aware of Harley's intent to build a commercial facility on a single-family

residential use only land and remove the land use restrictions. The approval of the Amended Plat on the property violated Texas law and should be voided, if not void *ab initio,* since it interferes with Plaintiff's property rights in violation of Texas statutes.

127.    Harris County knew and admitted that the Harley Defendants supplied false information in its permitting applications and application for the amended plat. Thus, the amended plat and any related permits authorizing commercial use on the Harley Lots should be voided, if not void *ab initio,* since they interfere with Plaintiff's property rights in violation of Texas statutes.

128.    Thus, despite the irregularities of the Harley Defendants' purported amended plat that clearly does not comply with Texas law, the Harley Lots remain subject to private residence only use and nuisance restrictions, and all the Harley Lots are in violation of these restrictions as further described below.

## V.    PLAINTIFF'S AUTHORITY TO ENFORCE THE RESTRICTIVE COVENANTS AND REGULATE THE SUBDIVISION

129.    A property owner of an "interested" property or representative designated by an owner of real property may initiate, defend, or intervene in litigation or an administrative proceeding affecting the enforcement of a restrictive covenant or the protection, preservation, or operation of the property covered by the dedicatory instrument.[10] TEX. PROP. CODE ANN. § 202.004(b). As a property owner in Block 3 of the Subdivision, Stone qualifies as an "interested" property owner.

130.    Moreover, the Restrictions authorize Stone to enforce them:

> Upon any violation or attempted violation of any of the stipulations, restrictions, covenants, and conditions hereinbefore set forth, it shall be lawful for Harris County, or any person or persons owning any real property situated in said subdivision to institute and prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such stipulation,

---

[10] *Giles v. Cardenas*, 697 S.W.2d 422, 427 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) (quoting *Simon v. Henrichson*, 394 S.W.2d 249 (Tex. Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.)).

restriction, covenant and/or condition, and either to prevent him or them from doing so or to recover damages for such violations.

*See* Restrictions at ¶ 19 (Exh. 1).

## VI.   CAUSES OF ACTION

### COUNT I:  THE HARLEY DEFENDANTS' INTENTIONAL VIOLATION OF THE RESTRICTIVE COVENANTS
(against the Harley Defendants)

131.    Paragraphs 1 through 130 are incorporated by reference as if fully set forward herein.

132.    Since 1945, the Restrictions have been properly recorded in the Official Public Records of Real Property of Harris County, Texas under Volume 1163, Page 533-34 and Volume 1362, Page 546-48 at Record No. 229176. *See* Restrictions (Exh. 1).

133.    An instrument that is properly recorded in the proper county is notice to all persons of the existence of the instrument. TEX. PROP. CODE ANN. § 13.002.

134.    HCP purchased property in the Lakeview Homes Addition with actual and constructive notice of the Restrictions. The Restrictions were properly recorded in the real property records of Harris County. Moreover, one or more of the Harley Defendants were provided a Notice to Purchasers informing the purchaser that the use of the Harley Lots is limited by the Restrictions and cited where to find them. *See* Notice to Purchasers (Exh. 2).

135.    Based on information and belief, after acquiring the Harley Lots, HCP has subsequently leased the Harley Lots to HMG for its commercial operations for the benefit of HMG and its parent company, HMS. Moreover, one or more of the Harley Defendants have built several commercial facilities on the Harley Lots as well as parking lots for its employees utilizing the other commercial facilities on the Harley Lots. None of these uses reflect residential purposes.

136.    Defendants' actions by invading a residential neighborhood in order to build and maintain commercial buildings undermine the general plan and scheme of the Subdivision.

137.    Defendants are in substantial violation of the Restrictions based on their operations in the Subdivision. Specifically, HCP and its lessees or tenants, HMS and HMG have failed to maintain the Harley Lots in accordance with the land use restrictions that require private residence use only.

138.    HMG provides petroleum transportation and bunker service along the United States Gulf Coast including the Ports of Houston and is using the restricted Lots to provide these services.

139.    One or more of the Harley Defendants demolished one or more private residences that were on the Harley Lots at the time they were acquired in order to construct commercial buildings or clear the lots:

- In the Spring of 2015, the Harley Defendants demolished a house at 313 Lakeside Dr. that was residential property at the time of its purchase in November 2012;

- In May 2013, HCP purchased a residential property at 315 Lakeside Drive and demolished the existing house in the Spring of 2014; and

- In May 2013, HCP purchased a residential property at 319 Lakeside Drive and demolished the existing house in the spring of 2014.

140.    On March 16, 2016, HMG gave notice of their intention to build their regional headquarters and other commercial buildings in the Subdivision by way of a letter from Mark Stiefel (Vice President, Administration at HMS).

141.    In response, on April 5, 2016, Plaintiff Stone personally notified Defendants of the expected violations if Defendants followed through with their plans *before* any substantial construction began on the property. *See* Plaintiff's Notice to Defendants (Exh. 3). On April 15, 2016, Plaintiff sent a similar letter to the Harley Defendants' attorney, Reid C. Wilson. Thus, the Harley Defendants went ahead with their development at their own peril.

142.    The photographs attached as Exhibit 4 document the Harley Defendants' commercial use of its Lots located in residential-only sections of Blocks 4 and 7 the Subdivision. These

commercial facilities are operated by HMG, which is a subsidiary of HMS. *See* Photographs of Defendants' Commercial Facility and Neighborhood (Exh. 4). As the landlord and owner of the Harley Lots, HCP has allowed these uses of the Harley Lots contrary to the Restrictions.

143.    One or more of the Harley Defendants, based on information and belief, HMG and/or HMS, utilize Lots 44 and 45 in Block 4 of the Subdivision for parking lots.  As the landlord and owner of the Harley Lots, HCP has allowed the use of these lots in a manner contrary to the private residence only limitations in the Restrictions.

144.    Specifically, in the summer of 2015, at 313 Lakeside in the Subdivision, the Harley Defendants began using an area in which foundation material (gravel) had been placed on the property as a parking area.  Harley spent several weeks removing broken concrete and fill material placed in flood control ditch by previous owner, remodeled the two-story home located at 313 Lakeside and removing trees and other vegetation on the lots they had purchased.

145.    Further, in September 2016, the Harley Defendants again began constructing a parking lot on the property located at 234 Lakeside Dr., laid a base material on an approximately ½ acre area, and looked to be enlarging the existing parking area associated with the prior residence on the property.  Based on information and belief, the Harley Defendants did not obtain a replat or pull valid permits for these improvements to Block 4 Harley Lots.

146.    The Harley Defendants' commercial operations in the Subdivision pose substantial health and safety risks for the residents in the Subdivision because such commercial activities include the transportation and storage of petroleum products which are highly flammable. There is a reasonable apprehension amongst residents in the neighborhood that the petroleum products could be improperly accessed or generate an explosion with disastrous results for the neighborhood. Examples of recent accidents in the Greater Houston area involving barges like

the Harley Defendants' confirm this belief of the potential dangers posed by the Harley

Defendants' operations near a residential subdivision:

- July 20, 2015 – Two barges collided, with one ship catching on fire and spilling its contents of petroleum naphtha – a highly dangerous substance used in fertilizer production.[11]

- June 10, 2015 – 1.5 miles of the Houston Ship Channel were shut down for nearly two hours. A moving barge collided with a docked ship, with the anchored ship spilling almost 23,000 gallons of toxic, flammable naphthalene – a highly dangerous substance used in moth balls and pesticides.[12]

- March 2015 – Shipping accidents caused a flammable gasoline additive MTBE (methyl tertiary butyl ether) to leak into the waterway. MTBE is also highly toxic to humans and animals. The spill forced residents of Morgan Point to shelter inside their homes, closed nearby roads and had first responders wearing gas masks and breathing gear.[13]

- March 22, 2014 – Texas City, TX – 168,000 gallons of viscous, tarry fuel oil spilled from a barge after colliding with another ship in the Houston Channel, affecting both fishing and shorebird habitats on both sides of the waterway.[14]

- October 2015 – A moored tug and barge sank in a section of the Houston Ship Channel near Galena Park, Texas, causing approximately 20 gallons of diesel fuel to leak from the tug, which was carrying about 300 gallons. The area was boomed off to contain and recover any additional spill while the vessels were being recovered.[15]

- September 2016 - The crude oil tanker Aframax River caught fire near the Intercontinental Terminals Company in Houston Ship Channel after a bunker tank was punctured by unidentified object. The vessel was under way with pilot on board and proceeding to the berth but struck unidentified object and suffered breaches at the bunker tank, which extended into fire. Flames and thick black smoke billowing from area of the tanker. Some quantity of fuel was spilled into the channel and cause environmental pollution.[16]

---

[11] https://www.houstonpress.com/news/two-barges-collided-near-the-houston-ship-channel-again-7605807
[12] https://www.ntsb.gov/news/events/Pages/2015_Houston_BMG.aspx
[13] https://www.houstonchronicle.com/news/houston-texas/houston/article/Channel-closure-continues-as-investigators-seek-6126604.php
[14] https://www.ntsb.gov/news/press-releases/Pages/PR20150407.aspx
[15] https://www.click2houston.com/news/ship-traffic-closed-in-part-of-houston-ship-channel-due-to-sunken-barge
[16] http://www.maritimeherald.com/2016/crude-oil-tanker-aframax-river-inflamed-and-spilled-fuel-in-houston-ship-channel/

- August 28, 2017 – During the floods of Hurricane Harvey, a barge broke loose and traveled down the San Bernard River, leaving a path of destruction.[17]

- August 28-30, 2017 – During the floods of Hurricane Harvey, 30+ barges at adjacent company to HMG broke loose from their moorings. At least twice, the barges come down in groups of eight once, and even a group of 13 barges came down on the HMG fleet. HMG crews had to wrangle the barges to ensure that both life and property were safe.[18]  HMG did not notify any of the residents when this incident was occurring during Hurricane Harvey.

- September 2017 – At River Terrace Park, hazmat cleanup efforts began after Hurricane Harvey to remove hazardous materials in 50-gallon drums by persons in hazmat suits in the public park in the Subdivision.

- December 18, 2018 – A massive tanker fire erupted at a shipyard near Channelview. The facility, located on Market Street, stores jet fuel. Two workers were welding and doing maintenance on a tank when the fire started.[19]

147.    Harris County Emergency Service District #50, which is responsible for providing emergency services to the area, has indicated to Plaintiff that they would be ill equipped to respond in the event that there was some sort of disaster of these types that happened on Old River to one of HMG's barges parked adjacent to its facility, threatening the Subdivision and its residents.

---

[17] https://www.houstonchronicle.com/news/houston-texas/houston/article/Runaway-barge-during-Harvey-leaves-Brazoria-12460525.php
[18] Harley Marine Services' Soundings Newsletter at 4 (September 2017).
[19] https://www.khou.com/article/news/massive-tanker-fire-erupts-at-channelview-shipyard/285-624064660



148.    The Harley Defendants' commercial operations in the Subdivision also create a nuisance for the residents who live there. These operations have increased truck traffic on the street. The Harley Defendants have installed fencing and built large commercial structures that block the residents' view of the Old River, which borders the neighborhood along Lakeside Drive.

149.    Residing at 318 Lakeside Drive since 1988, Plaintiff now lives directly across the street from HMG's commercial buildings at 239 Lakeside Drive.

150.    For these reasons, Plaintiff has had to bring suit to stop the ongoing commercial activity in her subdivision on the Harley Lots restricted for residential-use only. The Harley Defendants' actions are particularly egregious in that they entered the neighborhood with the intent to violate the recorded Restrictions, knowing the Restrictions existed preventing their use of the land for a commercial purpose and put nearby residents at risk.

151.    The Harley Defendants have failed to comply with the basic land-use restrictions governing the Harley Lots.

152.    In addition, unless the Harley Defendants are compelled to comply, the Restrictions may become meaningless and otherwise unenforceable, thereby adversely affecting all present and future owners of property within the Subdivision.

153.    If the Harley Defendants' commercial operations are not enjoined from violating the Restrictions and/or ordered to comply with the Restrictions, Plaintiff Stone will suffer impairment of her property rights. Further, Plaintiff Stone will suffer irreparable harm and a non-compensable injury of a continuing nature if the Harley Defendants' violations of the restrictions continue unabated.

154.    No amount of money can adequately compensate other property owners within the Subdivision for the harmful effect of the Harley Defendants' actions, nor can damages be accurately measured. As such, Plaintiff has no adequate remedy at law and Plaintiff is entitled to the injunctive relief requested herein.

## COUNT II:  NUISANCE
(against the Harley Defendants)

155.    Paragraphs 1 through 154 are incorporated by reference as if fully set forward herein.

156.    As described above, the Harley Defendants' operations in the Subdivision have substantially interfered with the use and enjoyment of Plaintiffs' land, intentionally or negligently causing a nuisance.

157.    The Plaintiff resides across the street from the Harley Defendants' commercial operations in a neighborhood that was restricted as residential from its inception.

158.    As described above, the Harley Defendants invaded the neighborhood and violated the existing Restrictions by constructing a commercial operation in a residential neighborhood. Such operations have created a nuisance for the homeowners in the area.

159.   The change in conditions in the Subdivision from March 2016 (when construction was announced) to August 2017 (when HMG completed construction) include the following:

- The construction and operation of a commercial operation in Block 7 and Block 4 of the Subdivision, including several buildings for commercial purposes in Block 7;

- Creation of a parking lot for employee parking in Block 4 of the Subdivision;

- Parking barges adjacent to Block 7 in Old River containing fuel oils, compressed gasses, and chemicals, and other flammable, hazardous materials in the Subdivision, just hundreds of feet from Plaintiff's front door;

- Dumping wastewater off HMG barge tug boats into the city sewer system where it would back up into neighbors' houses, specifically at 316 Lakeside into the bathroom and other rooms of the house, and suck the toilets dry;

- Washing off commercial trucks along the roadside into the road, ditches, or drainage ditches without a catch basin;

- Placing multitudes of barges and tugs within the confined waterway of Old River in a manner that inhibits or prevents emergency personnel or first responders from being able to properly respond to a disaster incident;

- Mooring barges contiguously side-by-side several barges deep within the banks and on Old River, increasing the likelihood of a multi-barge accident;

- Adding fencing and commercial lighting to around the commercial facility on Block 7;

- Increase in truck traffic along Lakeside Drive;

- Parking in, utilizing for maneuvering trucks and equipment, or blocking Plaintiff's driveway in Block 3 and other residents' driveways on Lakeside Dr. without consent;

- Removal of historic trees and natural landscaping on Block 7;

- Flying drones over Plaintiff's property on Block 3 and otherwise conducting surveillance of Plaintiff's property; creating not only a physical invasion, but Plaintiff's loss of privacy as the Harley Defendants' offices and tugs boats are at such a height employee can see right into Plaintiff's and other residents' homes;

- Using Lakeside Dr. for loading and unloading commercial trucks on the street, blocking traffic on Lakeside Dr. and preventing neighbors from exiting their driveways;

- Unauthorized trespassing by the Harley Defendants' representatives on Plaintiff's property in Block 3 of the Subdivision, including in Plaintiff's flowerbeds, to survey the property and for other commercial-related purposes;

- Razing of residential buildings on Blocks 4 and 7;

- Destroying habitat for whistling duck colony that nested in Subdivision as well as other birds such as bald eagles, red tail hawks, and egrets in the area;

- Failing to properly buffer the commercial property. Specifically, the facility is not constructed in accordance with Harris County commercial business regulations in residential areas, which requires a six-foot tall wood or masonry fence to screen off adjacent residential properties.[20] Moreover, there must be some shrubbery surrounding the perimeter.[21] Street trees shall be located on private property within ten feet of the adjacent property line fronting the public right-of-way; however, the Harley Defendants have planted trees in the right-of-way under utility lines;[22]

- Sounding of vapor release alarms from HMG's barges and diesel odors detected on Plaintiff's property; and

- Stress caused by additional business invading neighborhood as a result of the Harley Defendants' commercial operations, causing Plaintiff more aggravation and issues in having to enforce the Restrictions against other commercial interests.

160.    The commercial operations taking place on Blocks 4 and 7 in the Subdivision that are owned and operated by the Harley Defendants constitute a type of legal injury that substantially interferes with the Plaintiff's use and enjoyment of her real property. This injury causes unreasonable discomfort and annoyance to the Plaintiff's sensibilities as she attempts to use and enjoy her property.

---

[20] Regulations of Harris County, Texas for the Approval and Acceptance of Infrastructure at § 13.05 (entitled Treescape and Screening Requirements for Commercial Establishments and Public Buildings)(effective September 1, 2009).
[21] *Id.* at 80.
[22] *Id.* at 79.

161.    In addition to the change in conditions stated above, the Harley Defendants' operations on Blocks 4 and 7 of the Subdivision substantially interfere with the Plaintiff's use and enjoyment of her land for several reasons.

162.    The Harley Defendants' operations and related barge traffic happens at all hours of the day and night, interfering with Plaintiff's sleep and that of her husband. It is impossible for Plaintiff and her husband to sleep due to the noise that is created by the Harley Defendants' operations and the vibrations of Plaintiff's home as a result of certain operations taking place at the Site.

163.    On at least one occasion, the Plaintiff's home has filled with diesel fumes. This event was reported to Harris County Pollution Control Services.

164.    As a result of the Harley Defendants' barges parking on Old River and displacing a substantial amount of water, there has been increased flooding in the public park down the street on Lakeside Dr. in high tide events. The condition became so severe that the public playground had to be moved in the park to higher ground. This barge parking threatens the neighborhood as the flooding of the park occurs more regularly now that there are an increased number of barges.

165.    The Harley Defendants' interference with Plaintiff's use and enjoyment of her land is wholly inconsistent with the character and nature of the neighborhood and Subdivision, which was restricted as residentially only.

166.    All of these interferences cannot be dismissed as "trifles" or "petty annoyances" but rather must be understood to "destroy the comfort of persons owning and occupying adjoining properties…"   Under these circumstances, these interferences with the use and enjoyment of Plaintiff's land are unreasonable.

167.    As explained above, the Harley Defendants' operations cause various interferences with Plaintiffs' land, including but not limited to:  auditory interferences from large equipment and vehicular traffic early in the morning, throughout the day, and well into the evening and vibrations caused to Plaintiffs' home due to the Harley Defendants' commercial operations.

168.    As a direct result of these interferences, Plaintiff has sustained actual damages as a result of the injury to her individually and her ability to use and enjoy Plaintiff's Property.

### COUNT III:  WRIT OF MANDAMUS
(against the Approving Authorities)

169.    Paragraphs 1 through 168 are incorporated by reference as if fully set forward herein.

170.    HCP's intentionally violated statutory safeguards to protect covenants and restrictions, like the Restrictions, from being removed in applications to replat or amend a plat under the Texas Local Government Code.

171.    The Approving Authorities are complicit as they knew of the existence of the Restrictions governing the Harley Lots and approved the Amended Plat knowing the falsity of HCP's representations to the Approving Authorities on the Amended Plat that the amended plat did not intend to remove, alter, or amend the Restrictions. Such representations were made and the plat amendment was sought solely so that the Harley Defendants could build the HARLEY CHANNELVIEW MARITIME CENTER.

172.    Mandamus relief is available when a government official fails to perform a non-discretionary duty.

173.    Plaintiff is entitled to a writ of mandamus directing the Approving Authorities to revoke the Amended Plat and/or subsequent permits issued in reliance on the Amended Plat. The Approving Authorities adopted knowingly false statements by Defendant HCP required to

approve the Amended Plat and then one or more of the Approving Authorities issued or authorized permits in contravention of the Restrictions governing the Block 7 Harley Lots.

174.    The Houston Planning Commission is responsible for approving plat amendments on behalf of the City of Houston.

175.    In her official capacity as the Assistant Director of the City of Houston Planning Department, Jennifer Ostlind signed the Amended Plat.

176.    As the Assistant Director, Ms. Ostlind had a ministerial duty to comply with Section 212.016 of the Texas Local Government Code before approving or signing the Amended Plat.

177.    The Commissioners Court for Harris County is responsible for approving amended plats on behalf of the County.

178.    In his official capacity as the County Engineer, John Blount, P.E. signed the Amended Plat.

179.    As the County Engineer, Mr. Blount had a ministerial duty to comply with Section 232.011 of the Texas Local Government Code before approving or signing the Amended Plat.

180.    The Amended Plat illegally attempts to remove covenants and restrictions governing the Block 7 Harley Lots in contradiction to the representations made by the applicant, HCP, on the Amended Plat.

181.    The signatures of the Approving Authorities on the Amended Plat are ultra vires acts because the Approving Authorities violated the real property protections for the restrictions and covenants explicit in both Sections 212.016 and 232.011 of the Texas Local Government Code.

182.    The Approving Authorities' ability to approve any plat amendment in the Subdivision is non-discretionary function. The City must comply with Sections 212.016 of the Texas Local

Government Code. The County must comply with Section 232.011 of the Texas Local Government Code.

183.    The approval of the Amended Plat is a violation of Texas law justifying the issuance of a writ of mandamus to both Approving Authorities who are signatories to the Amended Plat.

184.    Under the authority of Texas Government Code Section 24.011, Plaintiff respectfully requests that this Court enforce the mandatory provisions of Sections 212.016 and 232.011 of the Texas Local Government Code, and, if necessary, to correct their illegal acts, direct the City of Houston and Harris County to undertake the remedies provided by Sections 212.018 and 232.005 of the Texas Local Government Code.

185.    Plaintiff asks the court to issue a Writ of Mandamus to compel the Approving Authorities, specifically, Assistant Deputy Director of the Planning Department of the City of Houston and the County Engineer for Harris County, Texas, to take action to vacate or void the illegally issued Amended Plat and to revoke or cancel any permits issued to the Harley Defendants in reliance on thereon.

186.    Plaintiff has no adequate remedy at law because the relief it seeks by mandamus addresses the harm caused by the Approving Authorities' actions and omissions to Plaintiff's property rights and approximately 190 other owners in the Subdivision of Lakeview Homes Addition.

187.    Furthermore, mandamus is the appropriate relief because the Plaintiff seeks to compel compliance by the Approving Authorities with the Texas Local Government Code and related regulations regarding permitting in Harris County and the extraterritorial jurisdiction of Harris County, Texas.

188.    Plaintiff has no other alternative but to ask this Court to issue a writ of mandamus to compel to void the Amended Plat and to revoke or cancel any permits issued to the Harley Defendants in reliance on the Amended Plat.

189.    By this claim, Plaintiff is only seeking injunctive relief against the Approving Authorities.

### COUNT IV:  VIOLATION OF THE TEXAS CONSITUTION REGARING THE IMPAIRMENT OF THE OBLIGATION OF CONTRACTS
(against the Approving Authorities)

190.    Paragraphs 1 through 189 are incorporated by reference as if fully set forward herein.

191.    Article I of the Texas Constitution provides for a Bill of Rights that the general, great and essential principles of liberty and free government may be recognized and established.

192.    Article I, Section 16 of the Texas Constitution provides that:

> No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made.

TEX. CONST. art. I, § 16.

193.    The guaranty of the Texas Constitution is directed against the impairment of the obligation of contracts rather than the contract itself. A contract is an agreement in which a party undertakes to do or not to do a thing. Said party is required by duty and by law to perform his undertaking and this is known as the obligation of the contract. Any law which releases a part of this obligation, any act which to any extent or degree amounts to a material change or modifies it, must impair it.

194.    Thus, the Approving Authorities cannot violate or negate state laws containing protections for contractual rights, like restrictive covenants, by refusing to uphold certain provisions explicit in the law for that very purpose.

195.    The residents of the Subdivision, like the Plaintiff, relied on covenants in purchasing their homes in the Subdivision that provided for private residence use only on the Harley Lots in Blocks 4 and 7.

196.    By one or more of the Approving Authorities' decisions to (1) approve the Amended Plat and (2) permit construction for commercial facilities on property that was validly restricted residential, they acted to impair the contractual obligations of the property owners in the Subdivision in violation of the protections found in the Texas Bill of Rights and the Texas Constitution.

197.    The Approving Authorities' issuance of the Amended Plat or permits knowing that HCP's intent to remove the Restrictions violated Article I, Section 16 and impaired the contractual obligations and private property rights of the owners of the Subdivision of Lakeview Homes Addition.

198.    These actions injured the Plaintiff and the similarly-situated owners in her Subdivision who are parties to the Restrictions by virtue of their ownership of property in the Subdivision.

199.    The Approving Authorities violated Article I, Section 16 by approving the Amended Plat to the extent that such approval effectively removed the Restrictions on the Block 7 Harley Lots. The Approving Authorities knew HCP's underlying representations needed for approval of the Amended Plat were false and were an effort to get commercial permits on the property.

200.    The approval of the Amended Plat ultimately allowed for the proliferation of commercial development and facilities in the Subdivision on the Harley Lots.

201.    The amended plat and subsequent permits for commercial use undermined the Restrictions and unlawfully imposed new obligations on the other residents in the Subdivision.

202.    By this claim, Plaintiff is only seeking equitable relief in the form of an injunction against the Approving Authorities.

## COUNT V:  VIOLATION OF THE TEXAS CONSTITUTION
## AND REMEDY BY DUE COURSE OF LAW
(against the Approving Authorities)

203.    Paragraphs 1 through 202 are incorporated by reference as if fully set forward herein.

204.    Article I of the Texas Constitution provides for a Bill of Rights that the general, great and essential principles of liberty and free government may be recognized and established.

205.    Article I, Section 19 of the Texas Constitution provides that:

> No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

TEX.CONST. art. I, § 19.

206.    Article I, Section 13 of the Texas Constitution provides, in pertinent part:

> All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

TEX.CONST. art. I, § 13.

207.    By approving the Amended Plat and the subsequent permits in violation of the Restrictions and applicable state laws governing the adoption and approval of plat amendments under the Texas Local Government Code, the Approving Authorities deprived Plaintiff and the similarly-situated owners in her Subdivision of their recognized private property rights.

208.    Specifically, before approving the amended plat or issuing permits that would authorize commercial construction on the Harley Lots in contradiction to the duly-recorded Restrictions, the Approving Authorities should have first required some determination through a judicial process that the Restrictions were no longer valid as contended by HCP.

209.   Paragraph 20 of the Restrictions governing the Subdivision provide that "the [t]he invalidation of any one of said stipulations, restrictions, covenants and/or conditions, by Judgment or Court Order, shall in no wise affect any of the other provisions, which shall be and remain in full force and effect."

210.   Neither the Approving Authorities nor HCP had any Judgment or Court Order to rely on in signing the Plat amendment or issuing permits in dereliction of the Restrictions.

211.   HCP did not have the ability to unilaterally assert the Restrictions were unenforceable. Nor did the Approving Authorities have the power or authority to determine the Restrictions were unenforceable without some judicial process or notice to Plaintiff and the other property owners in the Subdivision.

212.   By this claim, Plaintiff is only seeking equitable relief in the form of an injunction against the Approving Authorities.

### VII.    REQUEST FOR INJUNCTIVE RELIEF
(against the Harley Defendants and the Approving Authorities)

213.   Paragraphs 1 through 212 are incorporated by reference as if fully set forward herein.

214.   Plaintiff has grounds for injunctive relief pursuant to TEX. CIV. PRAC. & REM. CODE § 65.011(1) and (3).

215.   "The plaintiff in an action to enforce restrictive covenants is not required to prove actual damages in order to obtain injunctive relief.  Where a distinct or substantial breach of the restrictions is shown, the courts will enjoin the violation even though there is no proof of actual damages or irreparable injury." *Gunnels v. North Woodlands Hills Community Ass'n,* 563 S.W.2d 334, 337 (Tex. Civ. App.—Houston [1st Dist.] 1978, no writ) (citations omitted). *Accord, e.g., Jim Rutherford,* 25 S.W.3d at 849 (explaining plaintiff seeking "injunction to enforce a

53

restrictive covenant is not entitled to show proof of irreparable injury…[only] an act that would breach the restrictive covenant.") (citations omitted).

216.    The Harley Defendants' failure to comply with the Restrictions undermines the general plan and scheme of the restrictions and infringes upon the rights of other property owners and residents of the Subdivision. In addition, unless the Harley Defendants are compelled to comply, the Restrictions will become ineffective, thus adversely affecting the rights of all the present and future property owners and residence of lots within the Subdivision.

217.    Moreover, the Harley Defendants and the Approving Authorities should be permanently enjoined from recognizing the Amended Plat to the extent any of the Defendants contend that the amendment reflected in the Amended Plat effectively removed recorded covenants or restrictions, e.g., the Restrictions for Lakeview Homes Addition, on any of the Harley Lots owned by HCP in the Subdivision. Similarly, the Approving Authorities should be enjoined from issuing or renewing any permits for the Harley Lots that would allow uses, construction, or other activities that violate the Restrictions, and any permits for commercial or other non-residential use, construction, or other activities that violate the Restrictions (whether or not issued in reliance on or because of the illegal approval of the Amended Plat should be revoked or cancelled.

218.    On April 5, 2016, Plaintiff Stone personally notified the Harley Defendants of the violations herein prior to filing this suit and before construction began on the property. *See* Plaintiff's Notice to the Harley Defendants (Exh. 4). On April 15, 2016, Plaintiff sent a similar letter to the Harley Defendants' attorney, Reid C. Wilson of Wilson, Cribbs & Goren, P.C., the law firm that represents HCP in this action. Plaintiff also had communications with County and

City representatives regarding the Amended Plat and the Harley Defendants' plans for commercial use of the Harley Lots.

219.    In response to these requests, the Harley Defendants did not cease their planned construction or operations. Based on information and belief, the Harley Defendants completed construction of the commercial facility in the Subdivision in August 2017 in direct contradiction to the representations made to the Approving Authorities in the Amended Plat. These violations were willful, intentional and done with full knowledge of the potential consequences, like a civil lawsuit.

220.    No amount of money can compensate the present and future property owners and residents of the Harley Lots within the Subdivision for the harmful effect of the Harley Defendants' violations of the Restrictions and its misrepresentations in the Amended Plat, nor can the damages be accurately measured. Thus, Plaintiff has no adequate remedy at law and requests that the Court grant the Plaintiff's requests for injunctive relief.

## VIII.    CIVIL DAMAGES
(against the Harley Defendants)

221.    Paragraphs 1 through 220 are incorporated by reference as if fully set forward herein.

222.    The Harley Defendants' violation of the Restrictions in the Lakeview Homes Addition has damaged Plaintiff by decreasing the value of her real property and the value of the other properties in the Subdivision. Significantly, Plaintiff's property has decreased in value due to the Harley Defendants' improvements and commercial activities on the Harley Lots in violation of the residential-use only restrictions.

223.    Moreover, the Harley Defendants' improvements and commercial activities on Harley Lots create a nuisance in the neighborhood that has decreased and will further decrease the value

of Plaintiff's real property and the value of other properties in the Subdivision for the reasons described above.

224.    In addition, the Harley Defendants have imposed a real danger to the health and safety of Plaintiff, her family members, and her neighbors in the Subdivision because of the Harley Defendants' placement and storage of hazardous materials and highly flammable, combustible petroleum products near Plaintiff's property and other residences on Lakeside Dr.

225.    For all these reasons, Plaintiff seeks her actual damages for this devaluation of her real property at 318 Lakeside Dr., Channelview, Texas 77530.

226.    Any violation of the restrictive covenants further subjects the Harley Defendants to civil damages not to exceed $200.00 for each day of the violation. TEX. PROP. CODE ANN. § 202.004(c).

227.    Alarmed by the March 2016 letter she received about the construction of the Harley Defendants' corporate headquarters in her residential neighborhood, in April 2016, Plaintiff Stone notified the Harley Defendants of the violations of the Restrictions to resolve the situation before they started construction. *See* Notice (Exh. 3).

228.    The Harley Defendants' continued violations of the Restrictions have existed since construction completed in or about August 2017 and will continue to exist until this suit is resolved unless the requested injunction is issued. Therefore, Plaintiff Stone will seek an award of civil damages for some period upon the trial of this case.

## IX.   ATTORNEY'S FEES AND COSTS

229.    Because the Restrictions are a contract between property owners in the Subdivision, Plaintiff Stone may also recover as damages "reasonable attorney's fees from an individual or

corporation, in addition to the amount of a valid claim and costs for breach of contract." TEX. CIV. PRAC. & REM. CODE § 38.001(8).

230.    In an action based on breach of a restrictive covenant pertaining to real property, the Court shall allow a prevailing party who asserted the action reasonable attorney's fees in addition to the party's cost and claim. TEX. PROP. CODE ANN. § 5.006.

## X.    DEMAND FOR TRIAL BY JURY

231.    Plaintiff demands a trial by jury on all issues so triable.

## XI.    EXHIBITS

232.    In further support of her complaint, Plaintiff attaches the following exhibits as evidence:

| Exhibit | Description |
|---|---|
| 1 | Restrictions governing Lakeview Homes Addition |
| 2 | Notice to Purchasers issued to HCP |
| 3 | Plaintiff's Notice to the Harley Defendants of Violations |
| 4 | Photographs depicting the Harley Defendants' Violation of the Restrictions and the Neighborhood |
| 5 | Original Plat of Lakeview Homes Addition |
| 6 | Amended Plat of Lakeview Homes Addition |
| 7 | Overview of relative Lots in the Subdivision |

233.    Plaintiff includes Exhibit 7 to her Complaint as a demonstrative created from Harris County Appraisal District plat records to assist the parties and the Court in identifying: (1) the boundaries of the Subdivision, (2) the location of Plaintiff's lot in relation to the Harley Lots in the Subdivision, and (3) other uses of other property located outside the Lakeview Homes Addition Subdivision, such as the Harris County Park and a different subdivision, Lakeside

57

Parks Estate, that borders the Lakeview Homes Addition, but has a different set of restrictions, if any, governing uses within that subdivision's borders. *See* Demonstrative (Exh. 7).

## XII.  CONDITIONS PRECEDENT

234.    All conditions precedent have been performed or have occurred.

## XIII.  REQUEST FOR RELIEF

235.    For these reasons, Plaintiff Carolyn Stone prays:

(a)    That Defendants City of Houston, Texas and Harris County, Texas be cited to appear and answer this complaint;

(b)    That on a full and final hearing on this cause, Defendants Harley Channelview Properties, LLC, Harley Gulf Marine, LLC, and Harley Marine Services, Inc. be permanently enjoined from violating the Restrictions for the Subdivision that (i) prohibit commercial use in Blocks 4 and 7 of the Subdivision and restrict use of the property to private residences only, (ii) prohibit noxious or offensive trade or activity in a manner to become an annoyance or a nuisance, and (iii) prohibit other uses, construction, or other activities that these Defendants have undertaken according to the evidence presented;

(c)    That on a full and final hearing on this cause, Defendants Harley Channelview Properties, LLC, Harley Gulf Marine, LLC, Harley Marine Services, Inc., City of Houston, Texas, and Harris County, Texas be permanently enjoined from recognizing the Amended Plat adopted in violation of TEX. LOCAL GOV'T. CODE § 212.016 and § 232.011 or other applicable state statutes, and the TEXAS CONST., art. I, §§ 13, 16 & 19, to the extent any of these Defendants contend that the amendment reflected in the Amended Plat altered or removed the force of recorded covenants or restrictions, e.g., the Restrictions for Lakeview Homes Addition, on any of the Harley Lots in the Subdivision;

(d)    That on a full and final hearing on this cause, Defendants Harley Channelview Properties, LLC, Harley Gulf Marine, LLC, Harley Marine Services, Inc., City of Houston, Texas, and Harris County, Texas be permanently enjoined from issuing or renewing any permits for the Harley Lots that would allow uses, construction, or other activities that violate the Restrictions and any permits for commercial or other non-residential use, construction, or other activities that violate the Restrictions (whether or not issued in reliance on or because of the illegal approval of the Amended Plat) should be revoked or canceled;

(e)    That a writ of mandamus issue against Jennifer Ostlind of the City of Houston, Texas instructing her to invalidate or void the Houston Planning Commission's

improper approval of the Amended Plat and revoke or cancel any permits issued by the City for commercial or other non-residential use, construction, or other activities that violate the Restrictions (whether or not approved in reliance on or because of the illegal approval of the Amended Plat);

(f)    That a writ of mandamus issue against John Blount, P.E. of Harris County, Texas instructing him to invalidate or void the County Commissioners Court's improper approval of the Amended Plat and revoke or cancel any permits issued by the County for commercial or other non-residential use, construction, or other activities that violate the Restrictions (whether or not in reliance on or because of the illegal approval of the Amended Plat);

(g)    That the Plaintiff recover her actual damages from the Harley Defendants related to the devaluation of her real property caused by the Harley Defendants, their violations of the Restrictions, and the nuisance created in the neighborhood by the Harley Defendants' operations;

(h)    That the Plaintiff recover any civil damages against the Harley Defendants for the violations of the Restrictions since April 2016, as provided by Section 202.004(c) of the Texas Property Code, in an amount determined by the Court to be appropriate;

(i)    That the Plaintiff be awarded her reasonable attorney's fees (plus additional reasonable attorney's fees should the Defendants appeal a judgment in favor of the Plaintiff) and costs;

(j)    That all costs of Court be taxed against Defendants; and

(k)    That the Plaintiff be awarded interest on the entire amount awarded, including attorney's fees, at the highest rate allowed by law from the date of judgment until fully paid, together with all costs of court, and all such other and further relief, special or general, law or in equity, to which Plaintiff may show herself justly entitled or as the Court may deem just.

Dated: March 6, 2019.                    Respectfully submitted,

                                          By:   */s/ Amy Catherine Dinn*
                                               Amy Catherine Dinn
                                               Texas State Bar No. 24026801
                                               Fed. Id. No. 29009
                                               **ATTORNEY IN CHARGE FOR
                                               PLAINTIFF CAROLYN STONE**

OF COUNSEL:

LONE STAR LEGAL AID
P.O. Box 398
Houston, Texas 77001-0398
713-652-0077 ext. 1118
Fax 713-652-3141
adinn@lonestarlegal.org

Rodrigo Cantú
Texas State Bar No. 24094581
713-652-0077 ext. 1270
rcantu@lonestarlegal.org
*Application to Southern District of Texas Pending*

## CERTIFICATE OF SERVICE

I certify that a copy of Plaintiff's Complaint and Applications for Writ of Mandamus and for Permanent Injunction was served on the counsel stated below through the CM/ECF E-File System and by e-mail on March 6, 2019.

Brian Kilpatrick
Scott Clinton
Wilson, Cribbs & Goren, P.C.
2500 Fannin Street
Houston, Texas 77002
bkilpatrick@wcglaw.com
sclinton@wcglaw.com
*Attorneys for Defendant Harley Channelview Properties, LLC*

James M. Kimbell
Misha Paltiyevich
Clark Hill Strasburger
909 Fannin, Suite 2300
Houston, Texas 77010-3022
james.kimbell@clarkhillstrasburger.com
misha.paltiyevich@clarkhillstrasburger.com

-and-

David James
Clark Hill Strasburger
2615 Calder Ave, Suite 240
Beaumont, Texas 77002
david.james@clarkhillstrasburger.com
*Attorneys for Defendants Harley Marine Services, Inc. and Harley Marine Gulf, LLC*

*/s/ Amy Catherine Dinn*
Amy Catherine Dinn