United States District Court
Southern District of Texas
**ENTERED**
September 07, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Carolyn Stone, § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | | Civil Action H-19-413 |
| § | | |
| Harley Marine Services, Inc., et al., § | | |
| *Defendants*. § | | |

## MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 135. Pending before the court are Defendants' motion for summary judgment on Plaintiff's nuisance claim, ECF No. 117, and Defendants' motion for summary judgment on Plaintiff's breach of restrictive covenants claim, ECF No. 120. The court has considered the motions, the responses, and the applicable law. The court recommends that the motions be **GRANTED**.

### *1. Background*

Defendants Harley Marine Services, Inc. (HMS), Harley Marine Gulf, LLC (HMG), and Harley Channelview Properties, LLC (HCP) operate a barge transportation business in the subdivision known as the Lakeview Homes Addition (Subdivision). ECF No. 117 at 4, 6–7. Plaintiff Carolyn Stone, a homeowner residing in the Subdivision, claims that Defendants' commercial activity violates the Subdivision's deed restrictions (Restrictions) and causes nuisances that have diminished the value of her home. Pl.'s Am. Compl., ECF No. 9 at 2 ¶ 1. Defendants seek summary judgment and argue that Stone's claims are barred by the statute of limitations. ECF Nos. 117, 120.

Stone has owned and resided in her home at 318 Lakeside Drive since 1988. Stone Decl. ¶ 1, ECF No. 126-3 at 1; Stone Dep., ECF No. 117-4 at 9. Stone testified that she understood at the time of her home purchase that the Restrictions intended the neighborhood to be a residential subdivision. ECF No. 126-3 at 1–3, ¶¶ 2, 5, 8. Her home is located across the street from 239 Lakeside Drive. ECF No. 9 at 42.

In January 2011, HMS purchased an ongoing commercial marine transportation services business that had been operating at 239 and 311 Lakeside Drive since 2005. *See* Mark Stiefel[1] Dep., ECF No. 117-2 at 71, 104. HMS took over operations and entered a lease and moorage agreement in order to conduct business on the property. *See id.* at 71; ECF No. 120 at 27. At the time the 239 Lakeside Drive property was acquired, it already had a 4,000-square foot warehouse that had been there since 1988. Stiefel Dep., ECF No. 117-2 at 52. A modular home that was used as an office and other small outbuildings were on the properties at 239 and 311 Lakeside Drive. *Id.* at 94. Regarding 311 Lakeside Drive, Stiefel testified that fencing and a dock barge had existed there since 2012. *Id.* at 52–53. In 2014, two modular offices were placed, and a parking lot existed at 313, 315, and 319 Lakeside Drive. *Id.* at 86.

According to Stone, tugboat traffic increased from 2007 to 2011, to the point that Stone and neighbors had contacted the Coast Guard. Stone Dep., 117-4 at 52. Stone testified that she attributed the increase in activity not to Defendants but to another commercial marine business that she knew was operating near her home. *Id.*

---

[1] The court notes Stone's objections to Stiefel's deposition testimony. ECF No. 126 at 4–5. The court does not rely or rule on the portions of testimony to which Stone has objected.

In August 2013, a neighbor gave Stone the phone number of Mark Stiefel, Defendants' contact, regarding the purchase of five lots in the Subdivision. ECF No. 118-1 at 215. Almost a year later, on May 30, 2014, Stiefel contacted Stone about purchasing her property. Stone Dep., ECF No. 117-4 at 105–06; *see also* Stiefel Dep., ECF No. 118-1 at 105. Stone testified that, at that point in time, she "knew that they [Harley Marine] were the owners of the property across the street." Stone Dep., ECF No. 117-4 at 105–06. Because of the name, Stone also "knew [that] it was a marine business." *Id.* at 106.

Stone testified that she had seen activity at the property and heard barges in the river, but Stone denied knowing that the property was used for commercial purposes because "there was still [a] residential trailer . . . and houses on the property[.]" Stone Dep., ECF No. 117-4 at 106. During her deposition, Stone did not attribute the barge activity to Defendants' property because she "heard barges in the river from [another business] down at the end[,]" and saw "[no] more [activity on the property] than you would see going in and out of [Stone's own] property." *Id.* 106–07.

In 2015, HCP applied for partial replatting of certain lots within the Subdivision. ECF No. 9 at 12–14; ECF No. 117-5 at 1–4. Stone drafted a letter, dated April 30, 2015, to protest that application. ECF No. 117-5 at 1–4; Stone Dep., ECF No. 117-4 at 122. The letter was written by Stone on behalf of herself and some of her neighbors. Stone Dep., ECF No. 117-4 at 122–23.

The letter is significant to both pending motions for several reasons. First, from the context of the letter, it is clear Stone is aware that Defendants are and have been operating their marine business from within the subdivision. While she is seeking to block any future change to the Restrictions, her reasons for doing so are due to Defendants' and others' past and present misuse of their property within the subdivision. *See, e.g.*, ECF No. 117-5 at 2

3

(Stone complaining that Defendants' property "is and has been utilized as a commercial property improperly and in violation of the subdivision requirements since Harley Channelview Properties, LLC[,] took possession and began commercial and maritime operations."). She also directly accuses HCP of using its property "for commercial maritime purposes" which she characterizes as being illegal, improper, and in violation of the Restrictions. *Id.* at 3, ¶¶ 9–10. The letter complains of past commercial activity and ties the violations back to the beginning of Defendants' operations in the subdivision. *Id.* at 2. Again, there is no dispute that HMG took over the marine operations at 239 and 311 Lakeside Drive in 2011. Stiefel Dep., ECF No. 117-2 at 52, 71, 104.

> The letter goes on to complain that:
>
> While portions of the adjoining subdivisions may contain commercial maritime and other commercial enterprises[,] the granting of the applicants' variance will quite literally bring the hazards of commercial and commercial maritime activities (i.e. multitudes of barges, boats, tugboats, and other equipment loaded with toxic and hazardous chemicals subject to leakage and vapor releases) to our front door. *Already we are forced to tolerate [foul] smells, residues* on ourselves, homes, and animals, plants which look as though they have been sprayed with plant killer, *boat traffic and noise* all hours of the day and night, boat personnel and their families knocking on our door at night, high traffic flow impeding our ability to leave our homes, and heavy equipment traveling on our roadways and the *noise and other disturbances of them operating* on the commercial use properties day and night[.]

ECF No. 117-5 at 4 (emphasis added). While Stone did not tie the foregoing statements directly to Defendants' commercial activities, the entire context of the letter was to prevent Defendants' from

4

obtaining a variance to the Restrictions on their property, in large part based on Defendant's past and ongoing marine operations.

In November 2015, Defendants erected a sign outside their property announcing a new facility. Stiefel Dep., ECF No. 117-2 at 141; *see also* ECF No. 125-23 at 2. The sign contained a pictorial view of the facility and read "Harley Marine Gulf Future Home of Regional Headquarters." Stiefel Dep., ECF No. 117-2 at 141; *see also* ECF No. 125-23 at 2. In a letter dated March 16, 2016, Defendants notified Stone and her husband that Defendants were starting "to build [their] regional headquarters in Channelview consisting of an office building, shop building and waterfront improvement." ECF No. 118-1 at 252. Stiefel confirmed this timeline, stating that construction began in March 2016 and was completed by August 3, 2017. Stiefel Dep., ECF No. 117-2 at 199. During construction, Stone complained of increased traffic but did not recall in detail when she first noticed an increase in traffic. Stone Dep., ECF No. 117-4 at 230. Stone instead said, "I know it's heavier now than it's—than it's ever been, and I know that during the construction of the facility, we couldn't even get in and out of our driveway." *Id.*

On April 6, 2016, Stone emailed Douglas Ray of the Harris County Attorney's Office regarding Defendants' commercial construction and violations of the Restrictions. ECF No. 118-1 at 255. Stone requested that the office enforce the Restrictions and enjoin Defendants' activities and the construction in progress. *Id.* Stone stated "[t]ime is of the essence as pilings are being driven as this email is composed and we have been informed [that] foundations are to be poured in a week[']s time." *Id.*

In January 2019, Stone filed suit against Defendants for nuisance and violation of the restrictive covenants. ECF No. 1-2 at 2–25. Stone's complaint identifies Defendants' lots as 234, 239, 311, 313, 315, and 319 Lakeside Drive and 16521 and 16525 Pecan

5

Street. ECF No. 9 at 3 ¶ 5. In the nuisance section of Stone's amended complaint, Stone cites conduct such as: construction and commercial operations; creation of a parking lot; parking barges containing fuel oils, chemicals, and other hazardous materials; adding fencing and commercial lighting around the commercial facility; increased truck traffic; sounding of vapor release alarms from barges; diesel fumes filling Stone's home; and noise and vibration from Defendants' day-and-night operations. *Id.* at 43–47. Stone also broadly states that "[t]he commercial operations taking place on [the lots] that are owned and operated by the Harley Defendants constitute a type of legal injury that substantially interferes with [Stone's] use and enjoyment of her real property." *Id.* at 45 ¶ 160.

Defendants now seek summary judgment, arguing that Stone's nuisance claim was filed outside the two-year limitations period and that the violation of the restrictive covenants was filed outside the four-year limitations period. ECF Nos. 117, 120.

### 2. *Summary Judgment Standard*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401

F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim.").

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "[T]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 3. Summary Judgment Analysis

In cases brought under diversity jurisdiction, such as this one, federal courts apply Texas substantive law, including the statute of limitations and its exceptions. *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citing *Guaranty Trust Co. v. New York*, 926 U.S. 99, 111–12 (1945)). When no state court decisions control, federal courts make an "*Erie* guess" as to how the Texas Supreme Court would apply state law. *Id.* (citation omitted).

7

### A. *Nuisance*

The limitations period for a nuisance claim is two years. *Schneider Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004). The accrual date for a nuisance claim is a question of law for the court and depends on whether the alleged nuisance is permanent or temporary. *Id.* A nuisance is temporary if it is of limited duration and if it is uncertain if any future injury will occur. *Id.* at 272. Temporary nuisances are "occasional, intermittent or recurrent" or "sporadic and contingent upon some irregular force such as rain." *Id.* A nuisance is permanent if it "involves 'an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely.'" *Id.* Permanent nuisances are "constant and continuous" with injury that "constantly and regularly recurs." *Id.*

Because the evidence is undisputed that Defendants' business activities that allegedly caused the nuisance about which Stone complains are regular and constant, the court finds that Stone's nuisance claim is permanent. A permanent nuisance claim accrues when injury first occurs or is discovered. *Schneider Nat. Carriers, Inc.*, 147 S.W.3d at 270. Stone's complaint was filed in January 2019. ECF No. 1-2 at 2–25. For her complaint to be timely, she must have known of nuisances occurring, at the earliest, in January 2017—two years prior to bringing her claim.

In her amended complaint, Stone alleges that Defendants' construction of a commercial operation in a residential neighborhood created a nuisance for homeowners in the neighborhood. ECF No. 9 at 43. Among many other things, she alleges that the "construction and operation" of a commercial building in the Subdivision was part of the nuisance. *Id.* at 44. The unrebutted evidence shows that at least some of the things she cites in her complaint as causing a nuisance were in existence well prior to January 2017.

8

Defendants began the marine transportation business in 2011, continuing operations that had been ongoing for several years. In her April 2015 Letter opposing the variance to the Restrictions, discussed above, Stone acknowledged the commercial use of Defendants' property. ECF No. 117-5. She claimed that the property for which the variance was sought had been used for commercial operations since HCP took possession of the property, ECF No. 117-5 at 2. In other words, 2011. Stone also acknowledged the presence of foul odors, residues, boat traffic, neighborhood traffic, foot traffic onto the residents' properties, and noise. ECF No. 117-5 at 4.

In April 2016, Stone emailed to report Defendants' commercial construction and violations of the Restrictions as the pilings of the new office and shop buildings were being driven. ECF No. 118-1 at 255. Stone testified that, during construction of the facility, the traffic was so heavy that she could not get in and out of her driveway. Stone Dep., ECF No. 117-4 at 230. While Stone artfully avoids identifying the exact dates on which these construction-related nuisances occurred, it is undisputed that construction began outside the two-year limitations period.

Stone's husband testified on July 12, 2021, about the value of this lawsuit, stating that, for *six years*, Defendants' activities had caused him and his wife "detriment that [they] went through with all the trucks and the disasters that kept going on over there, the contractors threatening us, the truck drivers threatening us." Bobby Stone Dep., ECF No. 118-1 at 124. Six years prior to the date of his deposition was July 2015.

Stone produced no competent summary judgment evidence to rebut the evidence that Defendants engaged in the same type of commercial activity for years as she claimed in her complaint to have caused nuisance. Stone maintains that she was unaware of Defendants causing a nuisance until August 2017 when

9

Defendants completed their new buildings. She argues that, only after their completion, the auditory interference, traffic, vibrations, fumes, and flooding "substantially interfered" with her property. *See* ECF No. 126 at 10. Stone fails to cite any evidence showing that the completion of the office and shop buildings changed Defendants' operations in any way that created a nuisance that was not already a by-product of Defendants' long ongoing commercial activities. *Cf.* Bobby Stone Dep., ECF No. 118-1 at 235 (admitting that he could not attribute any nuisance to activity at the buildings). Stone's only evidence that the claim accrued in August 2017 is her own denial of any prior traffic, vibrations, fumes, and flooding. Her conclusory denial in the face of unrebutted evidence to the contrary is not enough to defeat summary judgment. *See Turner*, 476 F.3d at 343.

Accordingly, Stone's nuisance claim is barred by the statute of limitations, and Defendants' motion for summary judgment should be granted.

### B. Violation of the Restrictive Covenants

The limitations period for an action to enforce restrictive covenants is four years. *Air Park-Dallas Zoning Committee v. Crow Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 911 (Tex. App.—Dallas 2003, no pet.). An enforcement action accrues upon breach of the restrictive covenant. *Girsh v. St. John*, 218 S.W.3d 921, 925 (Tex. App.—Beaumont 2007, no pet.).

As stated above, the evidence shows that Defendants used the property solely for business purposes since 2011, when they entered a lease and moorage agreement in order to conduct business on the property. ECF No. 120 at 27. Stone argues that Defendants' breach did not occur until 2016, when Defendants replatted the lots and constructed new facilities. ECF No. 124 at 9. Stone also stated that she was unaware of Defendants' conducting

commercial activity between 2011 and 2015. ECF No. 126-3 at 9, 12.

However, Stone's deposition testimony shows that by May 30, 2014, the date of Stiefel's email to Stone, Stone was aware that Defendants were a *marine business* and owned property across the street from her. Stone Dep., ECF No. 117-4 at 105–06. Stone agreed that she had seen some level of "activity [on the property] by personnel, by staff, by people[.]" *Id.* at 106–07. Stone admits that she knew that Defendants were contacting property owners about purchasing their lots. *Id.* at 105–06. Moreover, in her April 30, 2015 letter objecting to Defendants' requested variance to the Restrictions, Stone makes clear that the deed restriction violations were ongoing since Defendants began operations there. ECF No. 117-5 at 2. It is unrebutted that Defendants commercial operations began in 2011.

Based on the foregoing, Stone's statements that she was unaware of Defendants' commercial activity are merely conclusory and are insufficient to defeat summary judgment. *Turner*, 476 F.3d at 343. Defendants have carried their burden by producing evidence that they engaged in the same commercial activities about which Stone complains. As such, Stone's claim for violation of the Restrictions had accrued at the latest by May 30, 2014. The four-year limitations period required that Stone bring her claim by May 30, 2018. Stone filed in January 2019, outside of the four-year limitations period. Accordingly, Stone's claim for violation of the Restrictions is barred by the statute of limitations, and Defendants are entitled to summary judgment.

### *4. Conclusion*

For the reasons stated above, the court recommends that Defendants' motion for summary judgment on Plaintiff's nuisance claim, ECF No. 117, and Defendants' motion for summary

judgment on Plaintiff's breach of restrictive covenants claim, ECF No. 120, be **GRANTED**.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Responses to any objections are due seven days after the objection is filed. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on September 6, 2023.

_____
Peter Bray
United States Magistrate Judge