United States District Court
Southern District of Texas
**ENTERED**
September 07, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Carolyn Stone, *Plaintiff*, | § § § § | |
| v. | § § § | Civil Action H-19-413 |
| Harley Marine Services, Inc., et al., *Defendants*. | § § § | |

### MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 135. Pending before the court is Defendants' Motion for Summary Judgment–Affirmative Defenses & Declaratory Judgment, ECF No. 118. The court has considered the motions, the responses, and the applicable law. The court recommends the motion be **DENIED**.

### 1. Background

This dispute centers on Defendants Harley Marine Services, Inc., (HMS), Harley Marine Gulf, LLC, (HMG), and Harley Channelview Properties, LLC's (HCP) operation of a barge mooring and storage business in the subdivision known as Lakeview Homes Addition (Subdivision) in Channelview, Texas. Plaintiff Carolyn Stone, a homeowner residing in the Subdivision since 1988, claims that Defendants' commercial activity violates the Subdivision's deed restrictions (Restrictions) and causes nuisances that have diminished the value of her home.

The Subdivision was established in the early 1940s in Channelview along the Old River, a tributary of the San Jacinto River, near the Houston Ship Channel. *See* ECF No. 125-3; ECF No. 125-4. The Subdivision comprised seven blocks encompassing 270 lots. *See* ECF No. 125-4; ECF No. 118-1 at 7. The Restrictions

limiting use of the property in the Subdivision are binding on all purchasers. *See* ECF No. 125-3 at 1. The Restrictions specifically state that the creators' intent was to establish a subdivision of residences with limited commercial property and to "create a first-class sub-division[.]" Among other restrictions, "[a]ll lots, plots or parcels of land shall be used for private residence purposes only" (Residence-Only Restriction) except for sixty-four lots on which commercial uses were permitted. *Id. see also* ECF No. 118-1 at 7; ECF No. 125-4 at 1. The Restrictions prohibited "noxious or offensive industry, business trade or activity." *Id.* at 1. The Restrictions stated that they were "to run with the land" and to renew automatically every ten years. *Id.*

Stone's residence is located at 318 Lakeside Drive, also known as Lot 9a in Block 3 of the Subdivision. ECF No. 125-37 at 1. In 2012, HCP acquired the property at 239 Lakeside Drive and 311 Lakeside Drive. *See* ECF No. 118-1 at 94–95, 100. HCP later acquired other lots in the same vicinity. *See id.* at 93. These lots are located in Block 4 and Block 7 and are subject to the Residence-Only Restriction. *See* ECF No. 125-37 at 3. Over the years, commercial activity has increased both inside and outside the Subdivision, especially along the Old River. *See* ECF No. 118-1 at 44, 63, 65, 67, 72, 75; ECF No. 117-4 at 105–07.

On January 2, 2019, Stone filed suit against HMS, HMG, HCP, and others.[1] *See* ECF No. 1; ECF No. 1-2 at 2–26. On January 25, 2019, HMS and HMG filed an answer and asserted several affirmative defenses, including waiver and laches. *See* ECF No. 1-2 at 27–29. On February 6, 2019, Defendants removed the action to

---

[1] Stone's original complaint also named City of Houston and Harris County as defendants, and her amended complaint added two individual defendants. *See* ECF No. 1-2 at 5; ECF No. 9 at 4–5. The court dismissed those defendants in April 2020. *See* ECF Nos. 36, 37.

federal court. *See* ECF No. 1-2 at 2. On February 13, 2019, HCP filed its answer and asserted multiple affirmative defenses, including "[c]hange in circumstances, conditions, or use[,]" waiver, and laches. ECF No. 4 at 13. HCP also asserted a counterclaim for declaratory judgment that "the restrictive covenants are not valid, not enforceable, void, or inapplicable to the subject property and [HCP]." *Id.* at 13–15.

On March 6, 2019, Plaintiff filed an amended complaint. *See* ECF No. 9. Almost three years later, on February 11 and 14, 2022, HMS and HMG filed an answer and an amended answer to Stone's amended complaint with her written consent under Federal Rule of Civil Procedure 15(a)(2). *See* ECF Nos. 77, 78. In the amended answer, HMS and HMG asserted, among other defenses, laches, waiver and "change in circumstances, conditions and/or use[.]" ECF No. 78 at 40–41. Under the heading "PRAYER," HMS and HMG asked the court to enter judgment against Stone and "[a] declaration that the restrictive covenants are not valid, not enforceable, void, or inapplicable to the subject property and [HMS and HMG]." ECF No. 78 at 41. HMS and HMG did not plead any counterclaim against Stone and thus did not affirmatively seek declaratory relief. *See* ECF No. 78; *see also* 28 U.S.C. § 2201(a) (requiring "the filing of an appropriate pleading" for the court to declare rights of a party seeking declaratory relief).

On June 3, 2022, Stone filed a motion to dismiss HCP's counterclaim for declaratory judgment on the basis that HCP failed to join the more than 200 other homeowners in the Subdivision. ECF No. 88 at 2; ECF No. 93 at 1. On July 5, 2022, Judge Hughes, to whom the case was then assigned, denied the motion, finding:

> Complete relief between Stone and HCP is possible without the homeowners[] because a declaratory judgment would determine only whether the

3

> restrictive covenants apply to HCP's lots and no others. The homeowners' interest in enforcing restrictive covenants in the subdivision is not impaired[] because a declaratory judgment would not prevent them from bringing a claim against HCP.

ECF No. 93 at 2. How Judge Hughes's Order might impact the scope, effect, and enforceability of any declaratory judgment HCP might obtain is not before the court.

Defendants filed multiple motions in November and December 2022, which the court addresses in several memoranda filed contemporaneously with this one. The court here addresses Defendants' motion for summary judgment on their affirmative defenses to Stone's nuisance and breach of restrictive covenant claims and on HCP's declaratory judgment claim.

### 3. *Summary Judgment Standard*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary

judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim.").

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "[T]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### *4. Objections to the Summary Judgment Evidence*

On summary judgment, a party may object to exhibits that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) ("At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'"). Declarations are competent summary judgment evidence if they are "made on personal knowledge, set out facts that would be

admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Stone offers a boilerplate set of objections to Defendants' exhibits. *See* ECF No. 125 at 3–7. Without identifying specific portions of Peter Boecher's and Matt Deal's expert reports, citing the evidentiary rule, or providing any legal reasoning, Stone asserts that they are hearsay. *See id.* at 3–4. Stone lists twenty-five page-and-line ranges in Mike Murphy's deposition transcript to which she raised one or more of the following objections at the deposition: ambiguous, nonresponsive, speculation, leading, and assumes facts not in evidence. *See id.* at 4–5. Stone also lists more than forty exhibits that she asserts are not relevant but fails to cite specific portions of the exhibits or provide any legal analysis. Finally, Stone asserts that one exhibit contains hearsay, is not relevant, and was not properly authenticated, again without citing specific portions of the exhibit or providing any legal reasoning. *See id.* at 5–7. The court nevertheless has considered every objection. The evidence upon which the court relied in ruling on this motion appears to be capable of being presented at trial in admissible form. The objections are denied without prejudice to raising them at trial.

Defendants object to the expert testimony of Mike Brubaker and to Stone's testimony under the Texas Property Owner Rule. ECF No. 134 at 1–2. As Defendants note, they separately filed motions to exclude or limit Brubaker's and Stone's testimony for the same reasons stated in Defendants' objections. In a contemporaneously issued memorandum and order, the court denies the motions to exclude or limit. For the reasons stated in the court's memorandum and order, Defendants' objections are also denied without prejudice to raising them at trial.

6

## *5. Analysis*

In the motion under consideration here, Defendants seek summary judgment on: (1) their affirmative defenses of "change in circumstances, conditions and/or use[,]" waiver, and laches;[2] and (2) HCP's counterclaim for declaratory judgment. ECF No. 118 at 6. In a contemporaneously issued memorandum and recommendation, the undersigned recommends that Stone's claims for nuisance and breach of the Restrictions be dismissed as untimely filed under the applicable statutes of limitations. Thus, the court need not reach Defendants' affirmative defenses to those claims. However, the legal arguments that Defendants offer in support of their affirmative defense of change in circumstance, conditions, or use appear to serve as the basis for HCP's motion for summary judgment on its counterclaim for declaratory relief. *See* ECF No. 118 at 80–81; ECF No. 134 at 10–16.

Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Federal Rules of Civil Procedure "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." Fed. R. Civ. P. 57.

HCP is the only defendant that pleaded a counterclaim. *See* ECF Nos. 4; 78. As pleaded, HCP requests that the court "declare that the restrictive covenants are not valid, not enforceable, void, or inapplicable to the subject property and Defendant [HCP]." ECF No. 4 at 15. Although Defendants repeat that language in their motion and acknowledge that HCP pleaded

---

[2] Defendants mentioned the affirmative defenses of unclean hands and estoppel twice in their motion but offer no argument for the application of those defenses to Plaintiff's claims. *See* ECF No. 118.

7

the declaratory claim, Defendants elsewhere in their motion "ask the court to enter judgment per 28 U.S.C. § 2201[] that the restrictions that Plaintiff would seek to apply to and limit HCP's property and HMG's business activities at the property are unenforceable and inapplicable to them." ECF No. 118 at 6; *see also id.* at 7. Importantly, as discussed above, neither HMS nor HMG filed "an appropriate pleading" for declaratory judgment under 28 U.S.C. § 2201(a); *see also* Fed. R. Civ. P. 7(a) (limiting pleadings to complaints, answers, and replies); *Batiste v. Lewis*, 976 F.3d 493, 501 (5th Cir. 2020) (stating that "pleading" means those pleadings listed in Rule 7(a), "which enumerates the pleadings permitted in federal practice"). The court further limited the claim on consideration of Stone's motion to dismiss, stating that "a declaratory judgment would determine only whether the restrictive covenants apply to HCP's lots and no others." ECF No. 93 at 2.

The court now turns to the issues addressed in the parties' briefs. HCP argues that the growth and expansion of commercial and business activity over the years in the area around the Subdivision amounts to a radical change in circumstances such that the Restrictions' limitation on the use of certain lots only as private residences are no longer valid and enforceable. ECF No. 118 at 5–6. Stone disagrees, arguing that, among other things, the Subdivision remains generally residential in Blocks 2, 3, 4, 5, and 6. ECF No. 125 at 2.

"Restrictive covenants in a deed are analyzed under the general rules of contract interpretation." *Smith v. Lowe*, NO. 14-22-00842-CV, 2023 WL 5487947, at *2 (Tex. App.—Houston [14th Dist.] Aug. 24, 2023, no pet. h.) (citing *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *Tanglewood Homes Ass'n Inc. v. Feldman*, 436 S.W.3d 48, 66 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). The goal of contract interpretation

is "to ascertain and give effect to the intent of its drafters, using the language of the instrument as a guide." *Smith*, 2023 WL 5487947, at *2 (quoting *Wiese v. Heathlake Cmty. Ass'n, Inc.*, 384 S.W.3d 395, 400 (Tex. App.—Houston [14th Dist.] 2012, no pet.)).

"A residential-only restrictive covenant may be nullified or voided when there has been 'such a change of conditions in the restricted area or surrounding it that it is no longer possible to secure in a substantial degree the benefits sought to be realized through the covenant.'" *Urias v. Owl Springs N., LLC*, 662 S.W.3d 561, 571 (Tex. App.—El Paso 2022, no pet. h.) (quoting *Cowling v. Colligan*, 312 S.W.2d 943, 945 (Tex. 1958)). When conditions have changed to the point that the very reason for the restrictive covenant has ceased, nonenforcement or termination of the covenant may be appropriate. *See Moseley v. Arnold*, 486 S.W.3d 656, 663 (Tex. App.—Texarkana 2016, no pet.). Courts refer to the degree of change necessary to justify voiding a residential-only restriction as "radical." *Davis v. Canyon Creek Ests. Homeowners Ass'n*, 350 S.W.3d 301, 309 (Tex. App.—San Antonio 2011, pet. denied) (citing cases).

Courts consider six factors in deciding whether a "radical" change has occurred:

> (1) the size of the restricted area; (2) the location of the restricted area with respect to where the change has occurred; (3) the type of change or changes that have occurred; (4) the character and conduct of the parties or their predecessors in title; (5) the purpose of the restrictions; and (6) to some extent, the unexpired term of the restrictions.

*Davis*, 350 S.W.3d at 309 (citing *Simon v. Henrichson*, 394 S.W.2d 249, 255 (Tex. Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.)). "Greater weight is given to changes that occur within the

9

subdivision than those occurring outside the restricted area." *Id.* (citing *Simon*, 394 S.W.2d at 255).

A court may not void a residential restriction as to a particular lot simply because it would be unfair to the lot owner to enforce the restriction based on a "change of conditions" that renders the property unsuitable for residential use. *Davis*, 350 S.W.3d at 309 (citing *Cowling*, 312 S.W.2d at 946). "The fairness to the lot owner must be weighed against the fairness to the other lot owners who bought the property in reliance on the restriction and wish to preserve the character of the area." *Id.* (citing *Cowling*, 312 S.W.2d at 946). "Generally, determining whether conditions have changed to the degree that justifies the non-enforcement, or termination, of a restrictive covenant is a fact question." *Moseley*, 486 S.W.3d at 663 (finding that fact issues on changed conditions precluded summary judgment).

Defendants cite *Moseley* in acknowledgement of the principle that deciding whether a radical change of conditions exists is usually a fact question. *See* ECF No. 118 at 62. That is exactly the case here. Even Defendants' own fifty-page recitation of the facts concerning the use of HCP's property and of the properties in its vicinity reflects the factual density of what needs to be weighed in making the determination. *Cf.* ECF No. 118 at 9–59. The competing expert reports, which address the lynchpin issue of change of conditions and consider all the evidence that is relevant to the six factors, are enough to show that facts are in dispute. This is particularly true given that the standard for determining a change in conditions requires a fact-intensive evaluation, including weighing the six factors and weighing whether the change is sufficiently radical.

Defendants' expert, Peter Boecher, and Stone's expert, Michael Brubaker, offer opinions on the Subdivision's current land use and status of the Restrictions. Both Boecher and Brubaker,

10

among other research and study, visually examined the Subdivision and surrounding area, reviewed the map of the plots of land in the area, reviewed the Restrictions, and reviewed area photos. *See* ECF No. 118-1 at 5–15; ECF No. 125-35. Boecher offered his opinion that land use in the Subdivision had changed significantly since its inception. ECF 118-1 at 8. He identified thirty-two residential lots that have commercial uses including all twenty-three lots along Lakeside Drive fronting Old River, where HCP is partially located. *Id.* He also identified multiple other nonconformities with the Restrictions, including apartments, mobile homes, and an industrial manufacturer. *Id.* Boecher calculated that less than half of the originally platted lots hosted a permanent residence. *Id.* at 9. In his opinion, the commercial and noncommercial nonconformities prevented the Subdivision from being considered a "first-class subdivision" as was the underlying purposes of the restrictions. *Id.* at 8. Boecher included in his calculations properties that do not comply with the Restrictions for various other reasons than commercial activity. *See id.* Boecher also found that nearby subdivisions had given way to commercial and industrial growth. *Id.* at 9.

Brubaker, in rebuttal to Boecher's report, disagreed that the land use in the Subdivision no longer conforms with the Residence-Only Restriction. ECF No. 125-35 at 18. While Brubaker noted that the Subdivision was comprised mostly of older homes that are "experiencing a variety of different levels of maintenance and repair[,]" the Subdivision remains predominately residential on the lots designated only for residential use. *Id.* at 18, 20. Brubaker determined that, of the 260 lots in the Subdivision (excluding HCP's ten lots), 26.9% are currently used for commercial purposes, reflecting an increase of 2.3%. *Id.* at 25. Brubaker thus limited his calculation to the increase in commercial activity, which is the change of condition at issue. *See id.* The experts disagree on the

degree to which there has been a change of conditions that undermines the Residence-Only Restriction. Their disagreement renders the issue inappropriate for summary judgment.

Texas courts are "understandably cautious in granting non-enforcement of the residential-only restriction, since not enforcing the residential restriction as to some lots may adversely affect the value of all the remaining residential lots in the subdivision." *Moseley*, 486 S.W.3d at 665. As discussed above, the purpose of the Restrictions, including the Residence-Only Restriction, as stated in the original document was to create a restricted residential subdivision. Whether the Subdivision has lived up to its goal of being first-class is not the issue. The question is whether the change of conditions has thwarted the purpose of maintaining a restricted residential Subdivision. *See Moseley*, 486 S.W.3d at

Because the court finds genuine disputes of material fact preclude summary judgment on HCP's' declaratory judgment claim, the court does not reach Stone's counterarguments that "multiple legal defenses based on estoppel . . . preclude HCP's recovery on its counterclaim." ECF No. 125 at 12. Because Stone did not move for summary judgment on the estoppel-based affirmative defenses, whether those defenses apply to the declaratory judgment claim is left for another day.

### 6. Conclusion

For the above reasons, the court recommends that Defendants' motion on its affirmative defenses be **DENIED AS MOOT** and HCP's motion for summary judgment on its declaratory judgment claim be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Responses to any objections are due seven days after the objection is filed. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on September 6, 2023.

Peter Bray
United States Magistrate Judge