United States District Court
Southern District of Texas
**ENTERED**
January 30, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Carolyn Stone, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-19-413 |
| | § | |
| Harley Marine Services, Inc., et al., | § | |
| *Defendants*. | § | |

## AMENDED MEMORANDUM AND RECOMMENDATION

In a September 6, 2023 Memorandum and Recommendation (M&R), the undersigned recommended that Defendants' motion for summary judgment on Plaintiff's nuisance claim, ECF No. 117, and Defendants' motion for summary judgment on Plaintiff's violation of restrictive covenants claim, ECF No. 120, be granted. *See* ECF No. 140. The court concluded that Plaintiff's claims for nuisance and violation of restrictive covenants were barred by the applicable statutes of limitation. *See* ECF No. 140.

On September 21, 2023, Plaintiff filed objections to the M&R. ECF No. 142. On September 28, 2023, Defendants responded to Plaintiff's objections. ECF No. 143. On October 17, 2023, the district judge returned the motions for summary judgment on the claims for nuisance and violation of restrictive covenants to the undersigned with instructions to reconsider his findings and conclusions in light of Plaintiff's objections and Defendants' response to the objections. *See* ECF No. 145; *cf.* Fed. R. Civ. P. 72(b)(3) ("A district judge may resolve objections by "accept[ing], reject[ing], or modify[ing] the recommended disposition; receiv[ing] further evidence; or return[ing] the matter to the magistrate judge with instructions.").

The September 6, 2023 M&R, ECF No. 140, is withdrawn, and this Amended M&R is substituted in its place. The court recommends that Defendants' motion for summary judgment on Plaintiff's claim for common-law nuisance, ECF No. 117, be **GRANTED** and that Defendants' motion for summary judgment on Plaintiff's claim for violation of restrictive covenants, ECF No. 120, be **GRANTED IN PART**.

### 1. The Court's Original M&R[1]

#### A. Background

Defendants Harley Marine Services, Inc., (HMS), Harley Marine Gulf, LLC, (HMG), and Harley Channelview Properties, LLC, (HCP) operate a barge transportation business in the subdivision known as the Lakeview Homes Addition (Subdivision). ECF No. 117 at 4, 6–7. Plaintiff Carolyn Stone, a homeowner residing in the Subdivision, claims that Defendants' commercial activity violates the Subdivision's deed restrictions (Restrictions) and causes nuisances that have diminished the value of her home. Pl.'s Am. Compl., ECF No. 9 at 2 ¶ 1. Defendants seek summary judgment and argue that Stone's claims are barred by the statute of limitations. ECF Nos. 117, 120.

Stone has owned and resided in her home at 318 Lakeside Drive since 1988. Stone Decl. ¶ 1, ECF No. 126-3 at 1; Stone Dep., ECF No. 117-4 at 9. Stone testified that she understood at the time she purchased her home that the Restrictions intended the neighborhood to be a residential subdivision. ECF No. 126-3 at 1–3, ¶¶ 2, 5, 8. Her home is located across the street from 239 Lakeside Drive. ECF No. 9 at 42.

---

[1] With the exception of minor editorial and stylistic changes, section 1 of this amended M&R is materially the same as the original M&R. The court has indicated in the text below the part of the M&R that is being amended.

In January 2011, HMS purchased an ongoing commercial marine transportation services business that had been operating at 239 and 311 Lakeside Drive since 2005. *See* Mark Stiefel[2] Dep., ECF No. 117-2 at 71, 104. HMS took over operations and entered into a lease and moorage agreement in order to conduct business on the property. *See id.* at 71; ECF No. 120 at 27. At the time the 239 Lakeside Drive property was acquired, it already had a 4,000-square foot warehouse that had been there since 1988. Stiefel Dep., ECF No. 117-2 at 52. A modular home that was used as an office and other small outbuildings were on the properties at 239 and 311 Lakeside Drive. *Id.* at 94. Regarding 311 Lakeside Drive, Stiefel testified that fencing and a dock barge had existed there since 2012. *Id.* at 52–53. In 2014, two modular offices were placed, and a parking lot existed at 313, 315, and 319 Lakeside Drive. *Id.* at 86.

Stone testified that tugboat traffic increased from 2007 to 2011, to the point that Stone and neighbors had contacted the Coast Guard. Stone Dep., 117-4 at 52. Stone testified that she attributed the increase in activity not to Defendants but to another commercial marine business that she knew was operating near her home. *Id.*

In August 2013, a neighbor gave Stone the phone number of Mark Stiefel, Defendants' contact, regarding the purchase of five lots in the Subdivision. ECF No. 118-1 at 215. Almost a year later, on May 30, 2014, Stiefel contacted Stone about purchasing her property. Stone Dep., ECF No. 117-4 at 105–06; *see also* Stiefel Dep., ECF No. 118-1 at 105. Stone testified that, at that point in time, she "knew that they [Harley Marine] were the owners of the

---

[2] The court notes Stone's objections to Stiefel's deposition testimony. ECF No. 126 at 4–5. The court does not rely or rule on the portions of testimony to which Stone has objected.

3

property across the street." Stone Dep., ECF No. 117-4 at 105–06. Because of the name, Stone also "knew [that] it was a marine business." *Id.* at 106.

Stone testified that she had seen activity at the property and heard barges in the river, but Stone denied knowing that the property was used for commercial purposes because "there was still [a] residential trailer . . . and houses on the property[.]" Stone Dep., ECF No. 117-4 at 106. During her deposition, Stone did not attribute the barge activity to Defendants' property because she "heard barges in the river from [another business] down at the end[,]" and saw "[no] more [activity on the property] than you would see going in and out of [Stone's own] property." *Id.* 106–07.

In 2015, HCP applied for partial replatting of certain lots within the Subdivision. ECF No. 9 at 12–14; ECF No. 117-5 at 1–4. Stone drafted a letter, dated April 30, 2015, to protest that application. ECF No. 117-5 at 1–4; Stone Dep., ECF No. 117-4 at 122. The letter was written by Stone on behalf of herself and some of her neighbors. Stone Dep., ECF No. 117-4 at 122–23.

The letter is significant to both pending motions for several reasons. First, from the context of the letter, it is clear Stone is aware that Defendants are and have been operating their marine business from within the Subdivision. While she is seeking to block any future change to the Restrictions, her reasons for doing so are due to Defendants' and others' past and present misuse of their property within the Subdivision. *See, e.g.*, ECF No. 117-5 at 2 (complaining that Defendants' property "is and has been utilized as a commercial property improperly and in violation of the [S]ubdivision requirements since [HCP,] took possession and began commercial and maritime operations.") She also directly accuses HCP of using its property "for commercial maritime purposes" which she characterizes as being illegal, improper, and in violation of the Restrictions. *Id.* at 3, ¶¶ 9–10. The letter

complains of past commercial activity and ties the violations back to the beginning of Defendants' operations in the Subdivision. *Id.* at 2. Again, there is no dispute that HMG took over the marine operations at 239 and 311 Lakeside Drive in 2011. Stiefel Dep., ECF No. 117-2 at 52, 71, 104.

> The letter goes on to complain that:
>
> While portions of the adjoining subdivisions may contain commercial maritime and other commercial enterprises[,] the granting of the applicants' variance will quite literally bring the hazards of commercial and commercial maritime activities (i.e. multitudes of barges, boats, tugboats, and other equipment loaded with toxic and hazardous chemicals subject to leakage and vapor releases) to our front door. *Already we are forced to tolerate [foul] smells, residues* on ourselves, homes, and animals, plants which look as though they have been sprayed with plant killer, *boat traffic and noise* all hours of the day and night, boat personnel and their families knocking on our door at night, high traffic flow impeding our ability to leave our homes, and heavy equipment traveling on our roadways and the *noise and other disturbances of them operating* on the commercial use properties day and night[.]

ECF No. 117-5 at 4 (emphasis added). While Stone did not tie the foregoing statements directly to Defendants' commercial activities, the entire context of the letter was to prevent Defendants from obtaining a variance to the Restrictions on their property, in large part based on Defendants' past and ongoing marine operations.

In November 2015, Defendants erected a sign outside their property announcing a new facility. Stiefel Dep., ECF No. 117-2 at 141; *see also* ECF No. 125-23 at 2. The sign contained a pictorial view of the facility and read "Harley Marine Gulf Future Home of Regional Headquarters." Stiefel Dep., ECF No. 117-2 at 141; *see also* ECF No. 125-23 at 2. In a letter dated March 16, 2016, Defendants notified Stone and her husband that Defendants were

starting "to build [their] regional headquarters in Channelview consisting of an office building, shop building and waterfront improvement." ECF No. 118-1 at 252. Stiefel confirmed this timeline, stating that construction began in March 2016 and was completed by August 3, 2017. Stiefel Dep., ECF No. 117-2 at 199. During construction, Stone complained of increased traffic but did not recall in detail when she first noticed an increase in traffic. Stone Dep., ECF No. 117-4 at 230. Stone instead said, "I know it's heavier now than it's—than it's ever been, and I know that during the construction of the facility, we couldn't even get in and out of our driveway." *Id.*

On April 6, 2016, Stone emailed Douglas Ray of the Harris County Attorney's Office regarding Defendants' commercial construction and violations of the Restrictions. ECF No. 118-1 at 255. Stone requested that the office enforce the Restrictions and enjoin Defendants' activities and the construction in progress. *Id.* Stone stated "[t]ime is of the essence as pilings are being driven as this email is composed and we have been informed [that] foundations are to be poured in a week[']s time." *Id.*

In January 2019, Stone filed suit against Defendants for nuisance and violation of the restrictive covenants. ECF No. 1-2 at 2–25. Stone's complaint identifies Defendants' lots as 234, 239, 311, 313, 315, and 319 Lakeside Drive and 16521 and 16525 Pecan Street. ECF No. 9 at 3 ¶ 5. In the nuisance section of Stone's amended complaint, Stone cites conduct such as: construction and commercial operations; creation of a parking lot; parking barges containing fuel oils, chemicals, and other hazardous materials; adding fencing and commercial lighting around the commercial facility; increased truck traffic; sounding of vapor release alarms from barges; diesel fumes filling Stone's home; and noise and vibration from Defendants' day-and-night operations. *Id.* at 43–47. Stone also broadly states that "[t]he commercial operations taking

place on [the lots] that are owned and operated by the Harley Defendants constitute a type of legal injury that substantially interferes with [Stone's] use and enjoyment of her real property." *Id.* at 45 ¶ 160.

Defendants seek summary judgment, arguing that Stone's nuisance claim was filed outside the two-year limitations period and that the violation of the restrictive covenants was filed outside the four-year limitations period. ECF Nos. 117, 120.

### B. Motions for Summary Judgment

#### i. Summary Judgment Standard

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim.").

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "[T]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### ii. Summary Judgment Discussion

In cases brought under diversity jurisdiction, such as this one, federal courts apply Texas substantive law, including the statute of limitations and its exceptions. *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citing *Guaranty Tr. Co. v. New York*, 926 U.S. 99, 111–12 (1945)). When no state court decisions control, federal courts make an "*Erie* guess" as to how the Texas Supreme Court would apply state law. *Id.* (citation omitted).

### a. Nuisance

The limitations period for a common-law nuisance claim is two years. *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004). The accrual date for a nuisance claim is a question of law for the court and depends on whether the alleged nuisance is permanent or temporary. *Id.* A nuisance is temporary if it is of limited duration and if it is uncertain if any future injury will

8

occur. *Id.* at 272. Temporary nuisances are "occasional, intermittent or recurrent" or "sporadic and contingent upon some irregular force such as rain." *Id.* A nuisance is permanent if it "involves 'an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely.'" *Id.* Permanent nuisances are "constant and continuous" with injury that "constantly and regularly recurs." *Id.*

Because the evidence is undisputed that Defendants' business activities that allegedly caused the nuisance about which Stone complains are regular and constant, the court finds that Stone alleges a permanent nuisance. A permanent nuisance claim accrues when injury first occurs or is discovered. *Schneider Nat'l Carriers, Inc.*, 147 S.W.3d at 270. Stone's complaint was filed in state court on January 2, 2019. ECF No. 1-2 at 2–25. For her complaint to be timely, she must have known of nuisances occurring no earlier than January 2, 2017—two years prior to bringing her claim.

In her amended complaint, Stone alleges that Defendants' construction of a commercial operation in a residential neighborhood created a nuisance for homeowners in the neighborhood. ECF No. 9 at 43. Among many other things, she alleges that the "construction and operation" of a commercial building in the Subdivision was part of the nuisance. *Id.* at 44. The unrebutted evidence shows that at least some of the things she cites in her complaint as causing a nuisance were in existence well prior to January 2017.

Defendants began the marine transportation business in 2011, continuing operations that had been ongoing for several years. *See* Mark Stiefel Dep., ECF No. 117-2 at 71, 104. In her April 2015 Letter opposing the variance to the Restrictions, discussed above, Stone acknowledged the commercial use of Defendants' property. ECF No. 117-5. She claimed that the

property for which the variance was sought had been used for commercial operations since HCP took possession of the property, in other words, in 2011. *See* ECF No. 117-5 at 2. Stone also acknowledged the presence of foul odors, residues, boat traffic, neighborhood traffic, foot traffic onto the residents' properties, and noise. ECF No. 117-5 at 4.

In April 2016, Stone emailed to report Defendants' commercial construction and violations of the Restrictions as the pilings of the new office and shop buildings were being driven. ECF No. 118-1 at 255. Stone testified that, during construction of the facility, the traffic was so heavy that she could not get in and out of her driveway. Stone Dep., ECF No. 117-4 at 230. While Stone artfully avoids identifying the exact dates on which these construction-related nuisances occurred, it is undisputed that construction began outside the two-year limitations period.

On July 12, 2021, Stone's husband testified that, for *six years*, Defendants' activities had caused him and his wife "detriment that [they] went through with all the trucks and the disasters that kept going on over there, the contractors threatening us, the truck drivers threatening us." Bobby Stone Dep., ECF No. 118-1 at 124. Six years prior to the date of his deposition was July 2015.

Stone produced no competent summary judgment evidence to rebut the evidence that Defendants engaged for years in the same type of commercial activity as she claimed in her complaint to have caused nuisance. Stone argues that she was unaware of Defendants' causing a nuisance until August 2017 when Defendants completed their new buildings. She argues that, only after their completion, the auditory interference, traffic, vibrations, fumes, and flooding "substantially interfered" with her property. *See* ECF No. 126 at 10. But Stone fails to cite any evidence showing that the completion of the office and shop

10

buildings changed Defendants' operations in any way that created a nuisance that was not already a by-product of Defendants' long ongoing commercial activities. Stone's only evidence that the claim accrued in August 2017 is her own denial of any prior traffic, vibrations, fumes, and flooding. Her conclusory denial in the face of unrebutted evidence to the contrary is not enough to defeat summary judgment. *See Turner*, 476 F.3d at 343.

Based on the above analysis, the original M&R found that Stone's common-law nuisance claim is barred by the statute of limitations, and that Defendants' motion for summary judgment on that claim should be granted.[3]

### b. *Violation of the Restrictive Covenants*

The limitations period for an action to enforce restrictive covenants is four years. *Air Park-Dallas Zoning Comm. v. Crow Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 911 (Tex. App.—Dallas 2003, no pet.). An enforcement action accrues upon the breach of the restrictive covenant. *Girsh v. St. John*, 218 S.W.3d 921, 925 (Tex. App.—Beaumont 2007, no pet.).

As stated above, the evidence shows that Defendants used the property solely for business purposes since 2011, when they entered a lease and moorage agreement in order to conduct business on the property. *See* ECF No. 120 at 27. Stone argues that Defendants' breach of the Restrictions did not occur until 2016, upon the filing of the amending plat and the start of construction for the new facilities. ECF No. 124 at 9. Stone also stated that she was unaware of Defendants' conducting commercial activity between 2011 and 2015. ECF No. 126-3 at 9, 12.

However, Stone's deposition testimony shows that by May 30, 2014, the date of Stiefel's email to Stone, Stone was aware that

---

[3] The court reaffirms this conclusion.

Defendants were a *marine business* and owned property across the street from her. Stone Dep., ECF No. 117-4 at 105–06. Stone agreed that she had seen some level of "activity [on the property] by personnel, by staff, by people[.]" *Id.* at 106–07. Stone admits that she knew that Defendants were contacting property owners about purchasing their lots. *Id.* at 105–06. Moreover, in her April 30, 2015 Letter objecting to Defendants' requested variance to the Restrictions, Stone makes clear that violations of the Restrictions were ongoing since Defendants began operations there. ECF No. 117-5 at 2. It is unrebutted that Defendants commercial operations began in 2011.

Based on the foregoing, Stone's statements that she was unaware of Defendants' commercial activity are merely conclusory and are insufficient to defeat summary judgment. *Turner*, 476 F.3d at 343. Defendants have carried their burden by producing evidence that they engaged in the same commercial activities about which Stone complains. As such, Stone's claim for violation of the restrictive covenants accrued at the very latest by May 30, 2014, when Stiefel notified her of Defendants' interest in purchasing more lots. The four-year limitations period required that Stone bring her claim by May 30, 2018. Stone filed her lawsuit in January 2019, outside of the four-year limitations period.

Based on the above analysis, the original M&R found that Stone's claim for violation of the Restrictions' prohibition against commercial activity is barred by the statute of limitations, and Defendants' motion for summary judgment on that claim should be granted.[4]

---

[4] In her Objections, Stone points out that the court failed to consider that the lots in Block 4 were purchased in November 2015, within the four-year limitations period. ECF No. 142 at 7. She argues that there could be no violation of the restrictive covenants before the purchase date. *Id.* This objection has merit. For the reasons discussed in Part 3.B.i., below, the court recommends that summary judgment be granted with respect to claims for breach

### 2. Stone's Objections
#### A. Objections Standard

As allowed by Federal Rule of Civil Procedure 72(b)(2), Stone timely filed objections to the undersigned's M&R on Stone's claims for nuisance and violation of restrictive covenants, and Defendants responded. *See* ECF Nos. 142, 143. The undersigned has been asked to reconsider the M&R based on a review of the objections and the response.

Objections are not intended as an opportunity to raise new arguments not initially briefed to the magistrate judge or to point to evidence not cited in the summary judgment briefs. *See* Fed. R. Civ. P. 56(c)(3) (stating that, on summary judgment, "[t]he court need consider only the cited materials"); *FireFighters' Ret. Sys. v. EisnerAmper, L.L.P.*, 898 F.3d 553, 559 (5th Cir. 2018) (stating that an argument raised for the first time in objections is forfeited). The objecting party must specifically identify the challenged findings or recommendations. *Balli v. Akima Glob. Servs., LLC*, No. 1:23-CV-00067, 2023 WL 7064247, at *2 (S.D. Tex. Oct. 26, 2023). Moreover, on review of objections, the district judge "need not consider frivolous, conclusive, or general objections." *Id.* (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). Simply put, objections are not new motions for summary judgment, and they must be specific and object to a particular ruling or finding. Thus, the undersigned's task here is to reconsider the motions for summary judgment in light of the objections, not to treat the objections as new motions for summary judgment. In other words, if the court missed something or made an error, the court will correct it. But the court will not now consider arguments raised for the first time in the objections.

---

of the restrictive covenants on the Block 7 lots, but that summary judgment be denied with respect to claims for breach of the restrictive covenants on the Block 4 lots.

### B. Objections Discussion

#### i. Violation of Restrictive Covenants

The court turns first to Stone objections related to the court's finding that her claims for breach of the restrictive covenants are barred by limitations. The parties agree that the limitations period for those claims is four years. *Cf. Air Park-Dallas Zoning Comm.*, 109 S.W.3d at 911 (stating that the limitations period for an action to enforce restrictive covenants is four years).

Stone raises several arguments under the heading: "The Magistrate [Judge][5] erred by failing to recognize that Defendants' current use spans several lots, and Defendants redeveloped those properties from 2016–2017 to build their existing facility." ECF No. 142 at 4 (emphasis omitted). The court disagrees. Having read the summary judgment briefing, the court is aware of the facts. The problem is that Stone failed to clarify in her summary judgment response what significance she attached to the timeline. The court has now reconsidered the summary judgment briefing in light of the Objections and will discuss each point raised in turn. To the extent that Stone merely re-argues the issues raised and considered the first time around, the court does not revisit those points.

The court will address first the one objection that has merit. Stone argues that Defendants did not purchase the Block 4 lots[6] until November 2015, which is within the four-year limitations period. ECF No. 142 at 7–8. She points out that there could have been no violation of the deed restrictions before that time on the Block 4 lots. Stone did mention this important fact a few times in

---

[5] The undersigned is a magistrate judge, not a magistrate. Referring to a federal magistrate judge as a "magistrate" makes as much sense as calling a district judge "district" or a circuit judge "circuit." This has been the case since about 1990.

[6] The Block 4 lots are 234 Lakeside and 16521 and 16525 Pecan. The Block 7 lots are 239, 311, 313, 315, and 319 Lakeside.

her brief, ECF No. 124 at 4, 10, 14, but only dedicated one sentence to arguing the significance of the issue, *id.* at 17–18. And that one sentence was in a section of the brief dedicated mostly to the significance of the amending plat. *Id.* at 13–18. Moreover, Stone cited no authority for the proposition that the court could or should consider the accrual of the statute of limitations separately for lots purchased at different times. Defendants did not address this argument in their reply and now argue that Stone never advanced this theory. The court concludes that Stone arguably raised the issue in her original briefing and will thus reconsider the recommendation.

Because Defendants were not in possession of the Block 4 lots until November 2015, Stone has presented evidence demonstrating that Defendants' commercial activity on those lots, if any, began within the limitations period. *Cf. Buzbee v. Castlewood Civic Club*, 737 S.W.2d 366, 369 (Tex. App.—Houston [14th Dist.] 1987, no writ) (finding that the statute of limitations had run on earlier acquired lots but not on those that the defendants had purchased within the limitations period). Because Defendants have not presented evidence showing that their commercial operations in Block 4 predated the limitations period, the court recommends that this objection be **SUSTAINED** and that summary judgment be **DENIED** as to Stone's claims for violation of the restrictive covenants on the Block 4 lots.

The court turns to Stone's other objections relating to the court's denial of summary judgment on her breach of restrictive covenants claims. The court addresses the objections only as they relate to the Block 7 lots, given the preceding recommendation as to the Block 4 lots.

Stone objects to the court's factual finding that Defendants' commercial operations began in 2011, arguing that it "does not comport or is in direct conflict with other summary judgment

evidence." ECF No. 142 at 5. Stone argues that one of the defendants in this suit, HCP, did not exist until 2012 and that Defendants did not purchase any property in the Subdivision until 2012. *Id.* at 4–5. The unrebutted evidence reflects that, in January 2011, HMS purchased an ongoing commercial marine transportation services business and took over operations at 239 and 311 Lakeside. *See* Mark Stiefel Dep., ECF No. 117-2 at 71, 104. Stone admits that all of the Block 7 properties were purchased by Defendants in 2012 and 2013. ECF No. 124 at 13–14. Stone admitted that she knew about Defendants' commercial activity in May 2014. *See* Stone Dep., ECF No. 117-4 at 105–07; *cf.* ECF No. 117-5 at 1–4 (complaining, in an April 2015 letter, that the property for which the variance was sought had been used for commercial operations since HCP took possession of the property). There is no question that the limitations period expired before Stone filed suit in January 2019. Even if Stone is right that she could not have known about Defendants' commercial operations until 2012 when "HCP took possession of the property[,]" that date is still well outside the limitations period. The court recommends that this objection be **DENIED**.

The court turns to Stone's objection that the four-year statute of limitations applies to each of Defendants' lots separately. Other than the brief mention that the Block 4 lots were purchased within the limitations period, Stone did not raise this argument until she filed her objections. There is no discussion in the summary judgment briefing or in Stone's objections about when commercial activities started on each of the ten lots individually. Rather, the gist of Stone's argument was that the limitations period did not accrue until the eight lots in Block 7 were consolidated into one lot in the 2016 amending plat. ECF No. 124 at 9–18. She treated the Block 7 lots as one in her briefing and the court considered only the arguments the parties raised. Not

only is the argument waived, but Stone has presented no evidence by which the court could even consider it. The court recommends that this objection be **DENIED**.

The court next considers Stone's objection that the court "erred by failing to discuss that the Restrictions also prohibit nuisance" and that a four-year statute of limitations should therefore apply. ECF No. 142 at 8–9 (arguing that a claim for violation of the Restrictions' prohibition against nuisance activity would be timely under the four-year statute of limitations). The totality of Stone's argument on this point was this: "To the extent that Defendants seek to challenge Plaintiff's ability to assert claims for nuisance in this case more broadly based on limitations, Plaintiff also maintains a claim for breach of the restrictive covenants based on the prohibition against nuisance in Paragraph 17 of the Restrictions." ECF No. 126 at 15 (quoting ECF No. 124-3 at 3 ("No noxious or offensive trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.")). Defendants, in their reply, argued, "Plaintiff has no basis to assert that her common law nuisance cause of action is somehow absorbed into her claim[] for breach of a restrictive covenant . . . . Plainly, the two-year statute of limitations applies[,] and Plaintiff's nuisance claim is barred as a matter of law." ECF No. 131 at 9.

These arguments were made in connection with the motion for summary judgment on common law nuisance, not in connection with the summary judgment motion on breach of the restrictive covenants. Due to the scant mention of the issue in an apparently unrelated motion, it appeared to the court that the parties were relying on their briefing in connection with the summary judgment motion on the breach of restrictive covenants. In any event, the cited restriction prohibits activities that "may be or become" an

annoyance or nuisance. For the reasons discussed above with respect to the claims for breach of the restrictive covenants on Block 7, Defendants were engaged outside the limitations period in activities that Stone characterized as nuisances. And certainly, they were engaged in activities that eventually became nuisances, which the restriction also bars. The court recommends that this objection be **DENIED.**[7]

Stone next argues that, prior to 2015, Defendants' commercial activities were limited to water-based operations and did not violate the land restrictions. *See* ECF No. 142 at 6. As evidence, Stone points to a marine construction permit that Defendants obtained in October 2015 and Stone's own conclusory testimony that there were "no open and obvious commercial operations" on the lots before 2015. *Id.* at 6–7. The court addressed these issues in the M&R. The unrebutted summary judgment evidence, discussed in the M&R, shows that a 4,000-square-foot warehouse and other commercial buildings were located on the 239 Lakeside Drive lot at the time Defendants acquired the property. *See* Stiefel Dep., ECF No. 117-2 at 52, 94. As early as 2012, there were small buildings, fencing, and a dock barge on the 311 Lakeside Drive lot. *Id.* at 52–53. These structures represent on-land commercial activity. The claim accrued when Defendant began commercial activity on the lots. *Girsh*, 218 S.W.3d at 925.

---

[7] A point of clarification is in order at this point. As has been discussed, and as will be discussed further below, the court is recommending that summary judgment be granted as to all common law causes of action for nuisance on all the properties at issue in the case—both on Block 4 and on Block 7. The court is also recommending that Stone's claims for breach of the restrictive covenants be permitted to go forward only as they relate to Block 4. The parties did not brief below the relationship between common law nuisance claims and claims for nuisance that might be available under the restrictive covenants. It is not at all clear that they are co-extensive. Accordingly, only those claims that could be independently sustained as violations of the restrictive covenants on Block 4 will remain in the case. The court will not weigh in at this point on the contours of those claims, as the parties have not even attempted to define them.

There is no evidence that Defendants were somehow concealing their activities such that they could not have been discovered through reasonable diligence. *Cf. id.* at 927. It bears repeating that Stone cannot defeat summary judgment with her own conclusory statements. *See Turner*, 476 F.3d at 343. This is particularly so in light of Stone's admission *in 2015* that she had been aware of Defendants' commercial activities since Defendants took possession of the property and in light of Stone's ongoing complaints about land-based activity for years. *See* ECF No. 117-5 at 2, 4; ECF No. 118-1 at 255.

### ii. Common-Law Nuisance

Stone objects to the court's finding that her common-law nuisance was barred by the two-year statute of limitations. She argues that there was no permanent nuisance until August 2017. ECF No. 142 at 11–13. Stone raised this argument in her response, *see* ECF No. 126 at 9, and the court considered it. She now objects that the court "improperly focuse[d] on actions and inactions that simply do not constitute legal injuries to Stone that would trigger statute of limitations." ECD No. 142 at 12. As explained in the M&R, accrual of a permanent nuisance occurs when injury first occurs or is discovered. *Schneider Nat'l Carriers, Inc.*, 147 S.W.3d at 270. The M&R noted that the evidence presented on summary judgment, including statements and actions by Stone and her husband, belies her litigation position. As discussed in the M&R, Stone complained of ongoing nuisance activities in an April 2015 letter and an April 2016 email. *See* ECF No. 117-5 at 4; No. 118-1 at 255. Stone's husband testified that, since 2015, Defendants' activities had caused the Stones "detriment . . . with all the trucks and the disasters that kept going on over there[.]" Bobby Stone Dep., ECF No. 118-1 at 124. There is no evidence that the nuisance ceased and restarted, or that the type of nuisance changed at some point, either of which might give rise to a restart of the clock. The

evidence shows that the Stones experienced a permanent common-law nuisance injury more than two years before filing suit.

Stone now argues that the Stones were complaining "about the operations of other commercial barge companies outside of her deed-restricted neighborhood[.]" ECF No. 142 at 12. No evidence in the record rebuts the evidence that Defendants engaged for years in the same type of commercial activity as she claims to have caused nuisance and that she and her husband were aware and have claimed harm from it. The court recommends that this objection be **DENIED**.

### iii. Affirmative Defenses

Finally, Stone objects to the M&R because "The [undersigned's] recommendations (ECF Nos. 140 and 141) contain some contradictions with respect to the status of Stone's affirmative defenses which pertain not only to HCP's counterclaim but also to Defendants' affirmative defenses on limitations." ECF No. 142 at 13 (emphasis omitted). The court disagrees.

On January 2, 2019, Stone filed suit against HMS, HMG, HCP, and others in state court. *See* ECF No. 1; ECF No. 1-2 at 2–26. On January 25, 2019, HMS and HMG filed an answer. *See* ECF No. 1-2 at 27–29. After Defendants removed the case, HCP filed its answer, affirmative defenses (including statute of limitations), and counterclaim for declaratory judgment. ECF No. 4. The counterclaim for declaratory judgment requested that the court "declare that the restrictive covenants are not valid, not enforceable, void, or inapplicable to the subject property and Defendant." ECF No. 4 at 13–15. On March 6, 2019, Stone filed an amended complaint and an answer to HCP's counterclaim for declaratory judgment. *See* ECF No. 9. In the answer, Stone raised as affirmative defenses to the declaratory judgment action quasi-estoppel; equitable estoppel; unclean hands; estoppel based in law; and estoppel by deed. ECF No. 10 at 9–12. None of those

defenses were directed to the statute of limitations affirmative defense.

In February 2022, HMS and HMG filed, with Stone's written consent, an answer and an amended answer. *See* ECF Nos. 77, 78. In the amended answer, HMS and HMG did not plead any counterclaim but merely sought, under the heading "PRAYER," "[a] declaration that the restrictive covenants are not valid, not enforceable, void, or inapplicable to the subject property." ECF No. 78 at 41. Defendants also raised the affirmative defenses of change in circumstances, conditions and/or use and/or waiver of restrictions; limitations; laches; abandonment; waiver; estoppel; unclean hands; assumption of the risk; release and/or failure to mitigate. *Id.* at 40–41. As no affirmative claim was pleaded, Stone was not required to file an answer and did not do so. Thus, Stone never pleaded any "affirmative defenses" to Defendants' statute of limitations affirmative defense.

In December 2022, Defendants moved for summary judgment on three of their affirmative defenses—change in conditions, waiver, and laches—and summary judgment on the declaratory judgment claim that "the restrictive covenants are not valid, not enforceable, void, or inapplicable" to their property. ECF No. 118 at 6. In response to that motion, Stone argued that Defendants did not meet their burden to establish their affirmative defenses or the counterclaim. ECF No. 125 at 2. Stone also raised "various theories of estoppel" as affirmative defenses to the declaratory judgment action. ECF No. 125 at 24–32. The court did not address Stone's estoppel-based affirmative defenses to the request for declaratory judgment because it was not necessary to the resolution of the motion.

Separately, Stone argued, in opposition to Defendants' motion for summary judgment based on limitations, that the equitable estoppel doctrine bars application of the statute of

limitations. ECF 124 at 18–21. Stone argued that HCP made false representations in the notice to purchasers, the withdrawn replat application, and the certified amending plat on which Stone relied in deciding not to assert her rights. *Id*. These arguments are very different from the estoppel-based defenses she raised against the declaratory judgment action. With respect to the statute of limitations, Stone argues that Defendants' public statements acknowledging the deed restrictions somehow resets the limitations clock, despite the fact that Defendants' violative activities were ongoing before they made the statements. In connection with the declaratory judgment action, Stone argues that, having acknowledged the existence of the deed restrictions, Defendants cannot now take the position that they are invalid or unenforceable. The court's rejection of Stone's argument in connection with the statute of limitations has nothing to do with the court not having reached the issue in connection with the declaratory judgment.

The court considered and rejected Stone's argument that Defendants' statements acknowledging the existence of the deed restrictions somehow restarted the clock on limitations. Because the argument lacks merit and was not supported by any relevant authority, the court did not write separately on its reasoning. It does so briefly now.

As quoted in Stone's brief in response to Defendants' motion for summary judgment on statute of limitations, "[T]he doctrine of equitable estoppel is available when a person with actual or constructive knowledge of material facts makes a false representation or concealment of those facts to a party without knowledge or the means of obtaining knowledge of the facts, intending that party to act upon it, and that party detrimentally relies on the representation or concealment." ECF No. 124 at 18–

19 (quoting *Johnson & Higgins of Tex. Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998)).

Stone's argument fails for several reasons. Stone fails to cite evidence that satisfies the elements of equitable estoppel. The notices to purchasers informed Defendants of the City of Channelview's right to enforce the Restrictions, and, by signing, Defendants affirmed that they received that information. *See* ECF Nos. 124-9–124-13. In the replat application to Houston's Planning & Development Department, McKim & Cree, Inc., on behalf of HCP as the developer, acknowledges the Restrictions and seeks a variance for HCP's property. ECF No. 124-5. The application was withdrawn. *See id.* at 1. In the amending plat, Stiefel represents that HCP "does not attempt to alter, amend, or remove any covenants or restrictions." *See* ECF No. 124-8. None of these representations were made to Stone. Stone cites no evidence explaining how any of these representations were false or how HCP intended Stone to act upon them. Stone cites no evidence showing that she detrimentally relied on these representations or that her late filing of this case was due to reliance on the documents cited in her argument. Moreover, as discussed in the M&R, the evidence shows that Stone knew about Defendants' commercial activity for more than four years prior to filing suit. Her April 2015 letter was sent in protest to the replatting. ECF No. 117-5 at 1–4; Stone Dep., ECF No. 117-4 at 122. Stone has produced no evidence to suggest that she failed to timely file this lawsuit because she detrimentally relied on Defendants' representations in any of these documents.

To summarize, Defendants' public statements acknowledging the Restrictions may estop them from denying the existence or enforceability of the restrictions, but those public statements do not effect the running of the statute of limitations.

### 3. *Conclusion*

For the reasons stated above, the court recommends that Defendants' motion for summary judgment on Plaintiff's claim for common-law nuisance, ECF No. 117, be **GRANTED** and Defendants' motion for summary judgment on Plaintiff's claim for breach of restrictive covenants, ECF No. 120, be **GRANTED IN PART** as to the Block 7 lots only.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Responses to any objections are due seven days after the objection is filed. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on January 3 ̸0̸, 2024.

_____

Peter Bray

United States Magistrate Judge